[Civ. No. 17426. First Dist., Div. One. Oct. 8, 1957.]

MARIN COUNTY HOSPITAL DISTRICT et al., Respondents, v. WILLIAM C. CICUREL et al., Appellants.

Philip S. Ehrlich and Irving Rovens for Appellants.

Gardiner, Riede & Elliott and William T. Bagley for Respondents.

PETERS, P. J.—Plaintiffs and defendants own adjoining parcels of land in Marin County, which parcels, prior to 1909, were owned by a common grantor. Defendants admittedly own a 10-foot right-of-way along their northern boundary on the land of plaintiffs. Defendants, in addition, claim an easement, or a covenant running with the land, across the lands of plaintiffs and connecting with their 10-foot easement so that they will have ingress and egress to their lands from the north. Plaintiffs brought this action to quiet their title against these claims of defendants. The trial court quieted plaintiffs' title and defendants appeal.

There is no doubt that defendants' basic deed from the common grantor contains language referring to the claimed right-of-way across the lands of plaintiffs. The precise ques-

tion to be determined is whether that language merely created a personal covenant, as held by the trial court, or created a covenant running with the land, or an easement, as contended by defendants.

In 1909 J. E. Manlove owned all the lands now owned by plaintiffs and defendants. On May 10, 1909, Manlove and his wife deeded to Allyce T. Aiken the parcel of land now owned by defendants. The deed describes the parcel conveyed by metes and bounds, recites that the Manloves "grant, bargain and sell" to Aiken "and to her heirs and assigns, forever," the parcel of land involved "together with a right of way for all purposes of travel or as a roadway over and along a strip of land having a uniform width of ten feet and lying immediately north" of the parcel conveyed. This clearly conveyed to Aiken an easement along her northern boundary across the lands retained by the Manloves. The deed then recites that the Manloves also agree "to extend one of the roads of the tract to connect with said strip as to give ingress and egress thereto to vehicles, if so requested by" Aiken.

On November 11, 1909, Aiken deeded the property to Davis by a deed containing this language: "together with the right granted to said Allyce T. Aiken by J. E. Manlove and Margaret I. Manlove, by deed dated May 10, 1909 . . . to have said Manlove extend one of the roads in the tract of land, of which the above described property is a part."

On September 30, 1910, Davis deeded the property to the Hoopers and the same language appears at quoted above in the Aiken-Davis deed. Then in 1915 Hooper conveyed the property to himself and wife, in which deed the property was described by reference to the description in the Aiken-Davis deed, but which contained no reference at all either to the right-of-way or to the covenant. In 1917 the Hoopers deeded to Parker, the deed being identical with the preceding deed. On August 1, 1929, Parker deeded to Hamm. In this deed the metes and bounds description of the property is spelled out and the 10-foot easement is described, but there is no reference to the Aiken-Davis deed and no express mention of the covenant. The deed does purport to convey the land and 10-foot easement "together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in anywise appertaining." Hamm deeded to Richards in 1932 by a deed with the same description as the Parker-Hamm deed, but with no reference to "tenements, hereditaments, and appurtenances." This chain of title with similar deeds pro-

ceeded up to defendants, who were deeded the property June 10, 1948. Thus, starting with the Hamm-Richards deed and proceeding up to and including defendants, the deeds described the parcel conveyed by metes and bounds, and the 10-foot easement was conveyed, but the covenant was not directly or indirectly mentioned.

Now we again go back to the common grantor, Manlove. It is not necessary to trace in detail the plaintiffs' chain of title. Every deed leading from Manlove to plaintiffs specifically mentions and excepts the 10-foot easement, but in none of them is there any reference at all to the covenant. The first deed in this chain of title was prior to May 4, 1911. That date may be important because on that day a tract or subdivision map designated "Map No. 2 Bon Air Tract, Marin County, Cal." was recorded. It does not appear who filed this map. It shows defendants' property, with a notation that such property is "not included," and all of plaintiffs' property. On plaintiffs' property it shows several roads, one of which is shown as leading to the 10-foot easement along the northern boundary of defendants' property. Except for minor portions of these roads, the roads as shown on the map have never been laid out.

Substantially all of the property here involved, except for a portion of the property owned by the hospital, is unimproved grazing or agricultural land, and the area is fenced. The county has never assessed taxes on any portion of the land shown on the map as streets and roads.

Mrs. Cicurel, one of the defendants, testified that she and her husband purchased their property based on a map which showed Orchard Road, which would give her ingress and egress to her property from the north. She also testified that she intended to subdivide her property or build on it, particularly the northern part of it, but if she does so there would be no means of ingress and egress to the northern lots except through the southern portion of the land that she intended to retain.

The trial court found that it was untrue that defendants' property is or ever was a portion of the Bon Air Tract, and that it was also untrue that defendants' predecessor in interest purchased the property from the then owners of the Bon Air Tract by reference to a map of that tract. The court also found that defendants' property fronts on Tamalpais Road, and that it is untrue that it is necessary that Bay View Road and Orchard Road be maintained open and unobstructed in

order to permit defendants to have ingress and egress to their property. It was also found to be untrue that defendants have a perpetual or other easement over and across these roads; that, insofar as the roads are concerned, on plaintiffs' property no easement for a right-of-way to the property owned by defendants was granted in or by the Manlove-Aiken deed, nor was any such easement created by the wording in that deed, nor was any easement created that was appurtenant to the land owned by defendants.

Based on these findings the trial court entered its judgment quieting the title to plaintiffs' property, decreeing that defendants had a right-of-way therein only as to the 10-foot strip, and that defendants had no right, title or interest or easement in and to or over the remaining portions of plaintiffs' land. Defendants appeal.

The main contention of appellants is that the trial court erred in holding that the provision in the Manlove-Aiken deed in reference to the extension of the roadway was a mere personal covenant. Appellants contend that the deed created a perpetual appurtenant easement enforceable against respondents. Alternatively appellants contend that if not an easement, the provision was a covenant running with the land and binding on respondents.

 The provision in the Manlove-Aiken deed conferring on the grantee the right upon request to have one of the roads on the grantor's tract extended to connect with the 10-foot right-of-way was clearly a covenant. It required the grantor to take affirmative action with respect to his retained land, that is, upon request of the grantee to build a road to connect with the right-of-way. Such an obligation is a covenant and not an easement. The question is whether it is a personal covenant or one that runs with the land.

It is clear that the language did not create an easement. In 17 California Jurisprudence 2d 89, section 2, an easement is defined as "a right which subjects land or a tenement to some service for the use of some other land or tenement belonging to another owner, involving primarily the privilege of doing a certain act on, or to the detriment of, the former. . . . it is a privilege, without profit, which the owner of one tenement has a right to enjoy in respect of that tenement in or over the tenement of another person, by reason whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former."

 An easement always implies an interest in the land in and over which it is to be enjoyed.

■ The right to cross over the lands of another is, of course, an easement, and if this right is enjoyed with and used for the benefit of certain premises in such a manner as to be an adjunct of the land it is an appurtenant easement. (*Balestra* v. *Button,* 54 Cal.App.2d 192 [128 P.2d 816].) In the instant case the Manlove-Aiken deed first describes the land conveyed, and then describes the 10-foot right-of-way along the northern boundary of the land conveyed. This admittedly created an appurtenant easement in favor of the grantee. Then the deed recites that the grantors ''hereto agreeing to extend one of the roads of the tract to connect with said strip as to give ingress and egress thereto to vehicles, if so requested'' by the grantee. If this clause created an easement then we agree with appellants that such easement would be appurtenant and not in gross. This follows from the fact that the roadway, if constructed, was obviously intended by the parties as a means of passing to and from the property conveyed to the grantee. The cases support this conclusion. (*Nay* v. *Bernard,* 40 Cal.App. 364 [180 P. 827]; *Hopper* v. *Barnes,* 113 Cal. 636 [45 P. 874]; *Elliott* v. *McCombs,* 17 Cal.2d 23 [109 P.2d 329]; *Eastman* v. *Piper,* 68 Cal.App. 554 [229 P. 1002].)

■ But the real problem is not whether, if an easement was created, it was appurtenant or in gross, but whether an easement of any kind was in fact created. It will be noted that the grantor did not define the location or width of the roadway. While this would not be fatal to the creation of an easement, it is entitled to some weight. It is also to be noted that when the deed was executed the road involved was not in existence. Of even greater importance is the fact that under the terms of the clause the grantor was required to take some action, perform some act on his own property—i.e., upon request to construct the roadway and to connect it with the right-of-way. But the grantor was not required to act until he had been requested to do so by the grantee. These provisions are totally inconsistent with creating an interest in the land of another. Such provisions must be construed as disclosing an intent on the part of the parties to create a covenant and not an easement.

The next question to be determined is whether the covenant was a personal one or a covenant that runs with the land. Here we are met with certain Civil Code sections.

Section 1460 provides: ''Certain covenants, contained in grants of estates in real property, are appurtenant to such

estates, and pass with them, so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee, in this same manner as if they had personally entered into them. Such covenants are said to run with the land."

Section 1461 provides that the "only covenants which run with the land are those specified in this title, and those which are incidental thereto."

Section 1462 provides that: "Every covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property, or some part of it then in existence, runs with the land."

Section 1464 provides that: "A covenant for the addition of some new thing to real property, or for the direct benefit of some part of the property not then in existence or annexed thereto, when contained in a grant of an estate in such property, and made by the covenantor expressly for his assigns or to the assigns of the covenantee, runs with the land so far only as the assigns thus mentioned are concerned."

Section 1468 provides that: "A covenant made by the owner of land with the owner of other land to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, and which is made by the covenantor expressly for his assigns or to the assigns of the covenantee, runs with both of such parcels of land."

Under section 1462 the general test determinative of whether a particular covenant runs with the land is whether it is "made for the direct benefit of the property." The courts have been somewhat strict in applying this test. Thus in *Pedro* v. *County of Humboldt*, 217 Cal. 493 [19 P.2d 776], a deed to the county of a strip of land for road purposes running along the boundary of the grantor's ranch provided that the county should maintain and keep open a ditch along the ranch side of the right-of-way, and should keep in repair the flood gates and the outlet of the ditch, and also that the county would construct a road from the cow barn to the fields on the upper end of the property. The court held that these were not covenants running with the land within the meaning of section 1462, but were mere personal covenants assumed by the county.

In *Berryman* v. *Hotel Savoy Co.*, 160 Cal. 559 [117 P. 677, 37 L.R.A.N.S. 5], a restriction in a deed against building less than seven feet from the front property line was held to be a personal covenant, even though it was expressed to be a covenant running with the land. The court could find no

dominant tenement described in the deed to which the restrictions might make the grantee's land servient. (See also *Coulter* v. *Sausalito Bay Water Co.*, 122 Cal.App. 480 [10 P.2d 780].) Under these cases, the covenant here involved is not a covenant running with the land within the meaning of section 1462.

Appellants place considerable reliance on section 1468, contending that, under that section, even though the Manlove-Aiken deed contains no language binding Manlove's assigns, the covenant nevertheless runs both as far as burdens and benefits are concerned. It has been held that section 1468 does not apply to covenants contained in a grant of real property. (*Marra* v. *Aetna Construction Co.*, 15 Cal.2d 375 [101 P.2d 490].) At page 377 of that opinion the court stated: "But it is apparent that this section of the code applies only to covenants entered into between owners of the property. Covenants, like the present one, contained in a grant in fee of real property, are governed solely by section 1462 of the Civil Code, . . ."

In the Marra case the covenant, a building restriction, was carefully worded to try to bring it within section 1468. It clearly required the refraining of doing certain acts on the grantee's property. It was expressly made for the benefit of the grantor. It was expressly made binding upon the grantee and his assigns. It stated that it was intended to be a covenant running with the land. Nevertheless, the Supreme Court refused to enforce it as a covenant running with the land.*

In the present case the governing section is 1464 which refers to "the addition of some new thing to real property" and requires that, before such a covenant will run it must be made expressly binding on assigns. That is this case. █ The road to be built upon request was not in existence at the time of the Manlove-Aiken deed. Thus the covenant, necessarily, was a covenant "for the addition of some new thing to real property." Such a covenant is binding on the assignees of the covenantor only so far as they are mentioned in the deed. (*Bailey* v. *Richardson*, 66 Cal. 416 [5 P. 910].) In the instant case assigns are not mentioned in the Manlove-Aiken deed, nor in any subsequent deed. Thus the covenant must be held to be a personal covenant on the part of Manlove, and not binding on his assigns.

---

*The rationale of the opinion was criticized in 28 Cal.L.Rev. 769. However, the opinion is binding on this court, and necessarily determines that section 1468 is not applicable.

Appellants next contend that the Manlove-Aiken deed created an easement by implication, or an easement by necessity.

It is obvious that no easement by necessity was created. Appellants' land is not landlocked. They admittedly have access to their property from the south by means of Tamalpais Road. This prevents an easement of necessity from arising. ■ Such an easement arises by operation of law when a grantor conveys land that is completely shut off from access to any road by land retained by the grantor or by land of the grantor and that of a stranger. (See cases collected 17 Cal.Jur.2d 112, § 16.) ■ A way of necessity exists only in case of strict necessity, that is, when the claimed way constitutes the only access to the claimant's property. ■ If a road bounding the grantee's property gives access to the outside world no easement of necessity can arise. (*Corea* v. *Higuera*, 153 Cal. 451 [95 P. 882, 17 L.R.A.N.S. 1018].) It is immaterial that the claimed way on the grantor's land would give the grantee a more convenient access to his land. (*Orr* v. *Kirk*, 100 Cal.App.2d 678 [224 P.2d 71].)

Nor did an easement by implication arise. ■ It is true that when the owner of a tract sells part of the tract, the purchaser takes his tenement as between it and the land retained by the grantor with all the benefits and burdens that appear at the time of sale to belong to the land granted. In such cases an implied understanding arises that the burdens and correlative benefits shall continue as they were before the separation of the title. (See cases collected 17 Cal.Jur.2d 106, § 13.)

■ It is also true that strict necessity does not have to exist to create such an easement. All that is required in this respect is reasonable necessity. (*Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1 [47 P.2d 462].) It is not required that the claimed easement be the only means of access. (*Owsley* v. *Hamner*, 36 Cal.2d 710 [227 P.2d 263, 24 A.L.R.2d 112]; *Rees* v. *Drinning*, 64 Cal.App.2d 273 [148 P.2d 378]; *Mayer* v. *Hazzard*, 10 Cal.App.2d 1 [51 P.2d 189].)

■ Generally speaking, one of the elements required to create a grant by implication is that before separation of the title the use that gives rise to the easement shall be so long continued and be so obvious as to show that it was meant to be permanent. (*Orr* v. *Kirk*, 100 Cal.App.2d 678 [224 P.2d 71]; cases collected 17 Cal.Jur.2d 109, § 14.) This requirement did not exist at the time of the Manlove-Aiken grant. The

right granted then was to have a roadway constructed at some indefinite time in the future upon request of the grantee. There was no existing use involved.

This requirement of long continued use prior to the date of the grant is not absolute. This was well illustrated by *Fristoe* v. *Drapeau*, 35 Cal.2d 5, 8 [215 P.2d 729], where it was stated: "The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances. Although the prior use made of the property is one of the circumstances to be considered, easements of access have been implied in this state in situations in which there was no prior use. For example, where land was conveyed by reference to a map or plat showing proposed streets, it has been held that the grantee had an implied easement therein for use as a private way. [Citing cases.]" (See also *Danielson* v. *Sykes*, 157 Cal. 686 [109 P. 87, 28 L.R.A.N.S. 1024].)

In an attempt to bring themselves within this rule appellants contend that the original Manlove-Aiken sale was made by reference to the map of the Bon Air Tract. But there is no evidence that this sale was by reference to this or any other map. The Manlove-Aiken transaction took place on May 10, 1909. The Bon Air subdivision map was not recorded until May 4, 1911. This map excludes the Aiken property but includes the property retained by Manlove. It purports to show a road connecting with the 10-foot easement bordering the Aiken property to the north. Admittedly this road has never been constructed. Who filed the map in 1911 is not clear. Nor is it clear that on that date Manlove still owned the property covered by the map. The trial court correctly found that appellants' property was never a part of the Bon Air Tract, and also found that it was untrue that appellants' predecessors in interest purchased the property by reference to the map of that tract.

The only "evidence" referred to by appellants as indicating that the Manlove-Aiken transaction was made in reference to the map is the language in that deed which states that the grantee shall have the right to have "one of the roads of the tract" extended to connect with the right-of-way, and contends that this reference to a "tract" must have referred to the roads shown on the Bon Air Tract map recorded two years later. Obviously, the word "tract" in the phrase quoted simply refers to the parcel of land retained by Manlove, and in no way, directly or indirectly, referred to the Bon Air map.

These conclusions make it unnecessary to consider other points discussed by the parties. It is obvious that the trial court correctly held that there was no easement of any kind created by the Manlove-Aiken grant, and that the covenant to extend the road upon request was a personal covenant and not one running with the land.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.