[Civ. No. 20518. First Dist., Div. One. May 20, 1963.]

CLYDE L. REESE et al., Plaintiffs and Respondents, v. FRANZO BORGHI et al., Defendants and Appellants.

LeRoy A. Broun and Robert L. Lancefield for Defendants and Appellants.

Clyde L. Reese and Marie Reese, in pro. per., for Plaintiffs and Respondents.

SULLIVAN, J.—Defendants Franzo and Mary Borghi, husband and wife, appeal from a declaratory judgment granting plaintiffs Clyde L. and Marie W. Reese, husband and wife, a right-of-way of necessity over a parcel of land previously conveyed to defendants by plaintiffs. Defendants also appeal from an order denying their motion to strike plaintiffs' cost bill. Although represented by counsel below, plaintiffs appear here in propriis personis.

The principal facts are not in dispute. In 1953 plaintiffs acquired five contiguous parcels of land referred to in the record as Whiteside, B-1, B-2, C and A, together with a nonexclusive perpetual easement and right-of-way appurtenant thereto over and along a private road called Witherly Lane, which ran in a general easterly and westerly direction and connected on the west with a main highway. All of the

above parcels are situated on the north side of the above road. Proceeding from west to east, the parcels lie generally as follows: Whiteside, the most westerly, abuts the road on the north; next, parcel B-2 abuts the road on the north with parcel B-1 in the rear and to the north of B-2;[1] next, parcel A abuts the road on the north with parcel C in the rear and to the north of parcel A. Thus, generally speaking and with the exception mentioned in the footnote, parcel B-1 lies behind parcel B-2 and, immediately to the east of such strip of land, parcel C lies behind parcel A.

In 1955 plaintiffs sold and deeded Whiteside to the grantee bearing that name and also sold and deeded parcel A to one Symes. On April 2, 1956, plaintiffs sold and conveyed to the defendants both parcel B-1 and parcel B-2. As a result of such conveyance parcel C, which was retained by plaintiffs, became landlocked without any means of ingress or egress to or from Witherly Lane.

The record discloses considerable evidence bearing upon the circumstances surrounding the sale made by plaintiffs to defendants. It appears, and the court so found, that for some years prior to the sale plaintiffs used a pathway along and upon the easterly boundary of the strip of land composed of parcels B-2 and B-1 in order to obtain access to parcel C from Witherly Lane. It also appears that when plaintiffs contemplated the sale of this strip of land, they also had in mind that they might buy parcel A from Symes, thus acquiring access to the road. Symes had listed parcel A with a real estate broker for sale and plaintiffs had discussed with Symes the purchase of this parcel after the expiration of the exclusive listing ''in order to save the . . . real estate commission. . . .'' Plaintiffs claimed that they had an understanding with the defendants that if they were unable to buy parcel A from Symes they would continue to have an easement along the pathway customarily used by them which was on the two parcels sold to the defendants.

It developed that plaintiffs were unable to buy Symes' parcel because it was purchased by the secretary of defendants' counsel, who subsequently conveyed the property to the defendants. In view of the conclusion which we reach, it is not necessary to recite the details of this remarkable transaction.

---

[1] A finger of land protrudes southerly from the main part of parcel B-1 extending between Whiteside and B-2 and thus abutting the road along 25 feet thereof.

Suffice it to say that it effectively thwarted plaintiffs' plans for an access route to the road over the Symes' property.

As already pointed out, plaintiffs claimed an informal agreement with the defendants assuring the former an easement over the property being sold. On this point plaintiffs also introduced evidence to the effect that they proposed that such a provision be included in the written agreement of sale but that defendants' counsel informed plaintiffs it would be unnecessary since they could depend on the defendants to adhere to any understanding between the parties. The record discloses conflicting evidence on this phase of the case.

One significant and crucial occurrence remains to be noted. After the defendants acquired parcels B-1 and B-2 from plaintiffs, they constructed their family residence on the property in such a way as to block and render unusable the pathway which plaintiffs had previously used in order to reach parcel C.

On April 13, 1959, plaintiffs commenced the instant action in declaratory relief. Their complaint set forth four separately stated causes of action: the first sought ''a way of necessity from that portion of lot deeded to defendants''; the second sought similar relief on the basis of an estoppel; the third sought the declaration of an easement by implication; and the fourth sought an easement by implication on the basis that the defendants, knowing that plaintiffs desired to buy the Symes' property, proceeded to purchase it themselves, thus causing the plaintiffs to be landlocked.

The trial court found that the plaintiffs formerly owned all the parcels; that they had an easement appurtenant thereto over Witherly Lane; that they sold parcels B-1 and B-2 to the defendants; that plaintiffs' retained parcel C thereupon was landlocked; that plaintiffs had previously used a pathway over parcels B-1 and B-2 which was blocked and rendered unusable by defendants' residence; that at the time plaintiffs conveyed parcels B-1 and B-2 to defendants ''the parties . . . intended that plaintiffs have a temporary right of way ten feet in width for purposes of ingress and egress from parcel C to Witherly Lane along and across the property conveyed to defendants . . . until parcel C was no longer landlocked . . .''; and that the location of such 10-foot right-of-way along the eastern boundary of parcel A (i.e., the property purchased by defendants from Symes) was a location best suited for the interests of all parties concerned.[2] The court concluded that

---

[2] At the time of trial (November 15, 1960) defendants already owned

plaintiffs were entitled to "a right of way of necessity, ten feet in width," over and along the easterly boundary of parcel A to continue until parcel C is no longer landlocked. Judgment was entered accordingly. For the reasons indicated in the last footnote, no objection is made on this appeal to the validity of the right-of-way granted plaintiffs because of its location on the property conveyed to defendants by Symes rather than on that conveyed by plaintiffs. The *location* of the right-of-way is therefore not in issue.

Defendants contend before us (1) that the awarding of such right-of-way constitutes a taking of their property without just compensation in violation of their constitutionally guaranteed rights; (2) that in the light of the evidence the court was powerless to declare an easement by implied reservation; and (3) that the court erred in relieving plaintiffs of their failure to file a cost bill within the prescribed statutory period.

 Defendants' first contention rests upon the proposition that under section 1001 of the Civil Code "[a]ny person may . . . acquire private property for any use" specified in section 1238 of the Code of Civil Procedure by proceedings in eminent domain as provided in said code,[3] that one of the uses so specified is for "[b]yroads leading from highways to . . . farms" (Code Civ. Proc., § 1238, subd. 6), that an easement is a substantial property right and that under established principles of constitutional law no such property can be taken without just compensation. The short answer to this ponderous plea is that the right-of-way in question was sought and acquired as a common law right and not by the exercise of the power of eminent domain. Plaintiffs' common law right to seek a right-of-way of necessity is not affected by the fact that they could have a right-of-way by condemnation

the Symes property (parcel A) which had been conveyed to their counsel's secretary on April 10, 1956, the same day on which the conveyance of parcels B-1 and B-2 from plaintiffs to defendants was placed of record. While the right-of-way is not over the land sold by plaintiffs to defendants, we get the impression from the record that both parties consider this the best location if plaintiffs are entitled to any right-of-way. In their brief defendants state that if the court's conclusion is valid "then no objection is made to the location specified. . . ."

[3]Civil Code section 1001 provides: "Any person may, without further legislative action, acquire private property for any use specified in section twelve hundred and thirty-eight of the Code of Civil Procedure either by consent of the owner or by proceedings had under the provisions of title seven, part three, of the Code of Civil Procedure; and any person seeking to acquire property for any of the uses mentioned in such title is 'an agent of the state,' or a 'person in charge of such use,' within the meaning of those terms as used in such title. . . ."

(*Blum* v. *Weston* (1894) 102 Cal. 362, 369 [36 P. 778, 41 Am.St.Rep. 188] ; *Taylor* v. *Warnaky* (1880) 55 Cal. 350). In the language of the latter case, the plaintiffs here were not "driven to a proceeding to condemn the land on payment of its value. . . ." (55 Cal. 351.)

We turn to defendants' second contention. They claim that " [t]here can be no easement by implied reservation where the evidence clearly shows that the parties were thoroughly acquainted with the absence of access and did not, at the time of the conveyance, intend to create such a servitude." In support of this position, they argue that an implied easement must be based upon "obvious, continuous, and preexisting use" (the gist of the argument being that none existed here) and that the unqualified conveyance made by the plaintiffs precludes, in the absence of any finding of fraud or mistake, any intention of the parties to create an easement at the time of the conveyance.

The defect in the above argument derives from defendants' confusion concerning the basis on which the trial court granted relief. As determined by the court, plaintiffs' rights in the instant case rest on a claim to a right-of-way of necessity not to an easement by implication based, to use defendants' language, on an "obvious, continuous, and pre-existing use." Any possible doubt about the basis of the relief granted dissolves upon an examination of the judgment. It states "that plaintiffs . . . are granted a temporary right of way of necessity" and that "[t]his right of way shall terminate . . . when said aforedescribed parcel C is no longer landlocked. . . ."[4] In the law on the subject there is a well recognized and long standing distinction between a right-of-way of necessity arising by operation of law and an easement by implication based upon a preexisting use. (3 Powell on Real Property, §§ 410, 411; 2 Thompson on Real Property (1961 Replacement), §§ 355, 358, 362; 17A Am. Jur., Easements, §§ 41-45, 58; 17 Cal.Jur.2d, Easements, §§ 13-15, 16; 2 Witkin, Summary of Cal. Law, Real Property, §§ 183, 184, 187, 188.) The confusion to which defendants are prey is pointed out in 17A American Jurisprudence, section 58: "Although a way of necessity is sometimes confused with an easement arising, on severance of title, from a pre-existing use, there is a definite distinction between them, mainly be-

---

"A way of necessity arises from necessity alone and continues only while the necessity exists." (*Cassin* v. *Cole* (1908) 153 Cal. 667, 697 [96 P. 277].)

cause a way of necssity does not rest on a pre-existing use but on the need for a way across the granted or reserved premises. A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. . . ." (P. 668.)

■ "Questions in respect of the permanency, apparency, and continuity of servitude, which are of importance in connection with easements implied because the servitude is obvious and apparently permanent, are not applicable to typical ways of necessity; and it is immaterial in respect of the latter whether the grant is voluntary or involuntary by operation of law. . . ." (P. 670.)

■ Thus Thompson, *op. cit.*, section 362, page 410, states: "A doctrine closely related to the theory of easements by inference or implication is that of 'ways by necessity.' This rule, however, differs somewhat from the implication theory because whereas an easement may be generally based on the implied intent of the parties at the time of separation, and while necessity may be an operative factor in determining intent, a way of necessity rests on public policy often thwarting the intent of the grantor or grantee. Its philosophy is that the demands of our society prevent any man-made efforts to hold land in perpetual idleness as would result if it were cut off from all access by being completely surrounded by lands privately owned."

California law has given definite recognition to the above distinction between a right-of-way of necessity and an easement by implication and has declared different conditions requisite for relief on the former basis (see cases collected at 17 Cal.Jur.2d, Easements, § 16, pp. 112-115) than for relief on the latter basis (see cases collected at 17 Cal.Jur.2d, Easements, § 14, p. 109). It has been acknowledged and applied by this court. ■ In *Marin County Hospital Dist.* v. *Cicurel* (1957) 154 Cal.App.2d 294, 302 [316 P.2d 32], in holding that a claimed easement could be sustained neither as one of necessity nor as one by implication, we observed: "It is obvious that no easement by necessity was created. Appellants' land is not landlocked. They admittedly have access to their property from the south by means of Tamalpais Road. This prevents an easement of necessity from arising. Such an easement arises by operation of law when a grantor conveys land that is completely shut off from access

to any road by land retained by the grantor or by land of the grantor and that of a stranger. [Citation.] ▮ A way of necessity exists only in case of strict necessity, that is, when the claimed way constitutes the only access to the claimant's property. . . .

▮ "Nor did an easement by implication arise. It is true that when the owner of a tract sells part of the tract, the purchaser takes his tenement as between it and the land retained by the grantor with all the benefits and burdens that appear at the time of sale to belong to the land granted. In such cases an implied understanding arises that the burdens and correlative benefits shall continue as they were before the separation of the title. [Citation.]

▮ "It is also true that strict necessity does not have to exist to create such an easement. All that is required in this respect is reasonable necessity. [Citation.] It is not required that the claimed easement be the only means of access. [Citations.]"[5]

Accordingly, we think that it is because of their failure to appreciate the above legal rules and the distinction between them that defendants cite *Rees* v. *Drinning* (1944) 64 Cal. App.2d 273 [148 P.2d 378] and *Rosebrook* v. *Utz* (1941) 45 Cal.App.2d 726 [114 P.2d 715]. *Rees* involved an easement by implied grant; *Rosebrook* an easement by implied reservation. In each case, the claim rested upon a preexisting use which was open, visible and continuous, invoking a doctrine referred to by some authorities as "the rule of visible easements." (See 17A Am. Jur., Easements, § 41.) Neither *Rees* nor *Rosebrook* involve a claim of right-of-way of necessity.

▮ The California rule is settled that a right-of-way of necessity arises by operation of law when it is established that (1) there is a strict necessity for the right-of-way as when the claimants' property is landlocked (*Corea* v. *Higuera* (1908) 153 Cal. 451 [95 P. 882, 17 L.R.A. N.S. 1018]; *Marin County Hospital Dist.* v. *Cicurel, supra,* 154 Cal.App.2d 294) and (2) the dominant and servient tenements were

---

[5] In *Warfield* v. *Basich* (1958) 161 Cal.App.2d 493, 498 [326 P.2d 942], we again pointed out that strict necessity was not an element of an easement by implication as distinguished from right-of-way of necessity, stating that in the former situation "[t]he purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by the facts and circumstances of the case, and whether or not there was an implied easement depends upon the intent of the parties. [Citations.]"

under the same ownership at the time of the conveyance giving rise to the necessity. (*Taylor* v. *Warnaky, supra,* 55 Cal. 350; *Barnard* v. *Lloyd* (1890) 85 Cal. 131 [24 P. 658]; *Bully Hill Copper Mining & Smelting Co.* v. *Bruson* (1906) 4 Cal.App. 180 [87 P. 237]; see generally 17 Cal.Jur.2d, Easements, § 16, p. 112.)[6]

We are satisfied therefore that the record before us supports the court's action. By uncontradicted evidence, indeed by stipulation of the defendants, parcel C was shown to be landlocked. The trial court so found and also found more particularly that as a result of their conveyance to defendants, plaintiffs would have no means of ingress or egress to or from Witherly Lane unless they were given a right-of-way over defendants' land. The court also found that prior to the conveyance both parcels had been under the common ownership of plaintiffs.[7] These findings are sufficient to support the judgment. They are nowhere negated by any express intent of the parties to the contrary. (*County of Los Angeles* v. *Bartlett* (1962) 203 Cal.App.2d 523, 529 [21 Cal. Rptr. 776].) The additional findings, already noted, to the effect that the parties intended that plaintiffs should have a temporary right-of-way are not necessary to support the judgment and may be disregarded as surplusage. (See 48 Cal.Jur.2d, Trial, § 307, p. 309.)

We consider next defendants' claim that the trial court erred in relieving plaintiffs of their failure to file their cost bill on time. Judgment was entered on May 25, 1961. The cost bill was filed on June 19, 1961, after the ten-day period prescribed by Code of Civil Procedure section 1033 and therefore *fifteen days late.* On June 20, 1961, defendants moved to strike the cost bill or in the alternative to tax the costs.

On June 28, 1961, an associate of plaintiffs' then counsel filed an affidavit in opposition to said motion stating in substance: that on May 24, 1961, he left the proposed judgment, approved and signed by counsel for both parties, with the clerk of the trial judge "with instructions to endorse file and return said copies after Judge Friedman had signed the

---

[6]Cf. *Leinweber* v. *Gallaugher* (1940) 2 Wn.2d 388 [98 P.2d 311, 312], stating there must be "a common grantor, immediate or remote."

[7]As we pointed out earlier, the validity of plaintiffs' claim is not affected by the fact that the right-of-way is actually over parcel A purchased by defendants from Symes, since the parties have agreed that if a right-of-way is valid at all, such substitute location is in their best interests.

judgment"; that on June 15, 1961, plaintiffs' counsel, by long distance telephoned from Washington, D.C., instructed him to file the cost bill when the copies of the judgment were returned; that he thereupon called the above clerk, only to discover that the judgment had been entered on May 25, 1961, and to learn that the clerk disclaimed any knowledge of the copies of the judgment; that the cost bill was thereupon mailed to defendants' counsel on June 16, 1961, and endorsed filed on June 19, 1961; and "[t]hat plaintiffs' attorneys were justified in assuming that judgment had not been entered until the endorsed filed copies of said judgment were received, and that relief from the untimely filing should be permitted under California Code of Civil Procedure, Section 473."

On June 28, 1961, the court denied defendants' motion to strike the cost bill and ordered the "cost bill taxed from $323.80 to $172.35." We find no abuse of discretion in the court's action. The trial judge could properly infer that plaintiffs' counsel was justified in relying on the clerk to return endorsed filed copies of the judgment promptly upon its entry and that the late filing of the cost bill was due to the clerk's failure to do so. Furthermore defendants made no showing that they were prejudiced by the delay. ▮▮▮ As we said in *LeDeit* v. *Ehlert* (1962) 205 Cal.App.2d 154, 170 [22 Cal.Rptr. 747], where we upheld the trial court's action in accepting a cost bill 22 days late "we cannot say that the trial court committed that abuse of discretion which, if this court is to set aside the trial court's order, must clearly appear. [Citations.] We are further bound to resolve any doubt in favor of the party requesting such relief. [Citations.] ▮▮▮ Moreover, the time limitation here does not constitute a matter of jurisdiction; it is directed to the sound discretion of the court. [Citations.] Nor have appellants offered any showing that the 22-day delay caused them prejudice. [Citations.]"

▮▮▮ Defendants claim that the court should not have granted relief under Code of Civil Procedure section 473 in the absence of an application therefor upon notice to defendants. We think that it is clear from the affidavit in opposition to the motion to strike that it also contained an application for relief under section 473 in the concluding paragraph. The affidavit itself is also supportive of such an application. While it would have been better procedure for plaintiffs to have filed the usual notice of motion with a supporting affidavit, plaintiffs' affidavit served the same purpose

and it appears that such application of which defendants had notice was heard by the court on June 28, 1961. The record does not disclose any objection made by defendants at the time of the hearing.

Finally we note a request "for a retrial" made by plaintiffs who appear here in propriis personis. Plaintiffs state that they desire to assert a claim for damages for fraud and collusion against not only these defendants but other persons at no time parties to this cause. Such a claim is obviously beyond the scope of this action. Furthermore, plaintiffs have not appealed from any part of the judgment herein. Their request therefore cannot be recognized.

The judgment and the order denying the motion to strike the cost bill are affirmed.

Bray, P. J., and Molinari, J., concurred.