[Civ. No. 28368. Fourth Dist., Div. One. Dec. 9, 1983.]

MAX LICHTY et al., Plaintiffs and Appellants, v.
CHRISTOPHER D. SICKELS, Defendant and Respondent.

COUNSEL

Mitchell, Ashworth, Keeney, Barry & Pike and E. Ludlow Keeney, Jr., for Plaintiffs and Appellants.

Luce, Forward, Hamilton & Scripps and Robert J. Bell for Defendant and Respondent.

OPINION

**COLOGNE, Acting P. J.**—On October 1, 1982, the trial court entered a judgment in favor of defendant Christopher D. Sickels after Sickels' motion for summary judgment (Code Civ. Proc.,[1] § 437c) had been sustained on the basis that plaintiff Max Lichty's action for an easement by necessity was barred by the statute of limitations. The sole issue in this appeal is whether the statute of limitations embodied in section 318 applies to an action for an easement by necessity.

Section 318 provides: "*Seizin within five years, when necessary in action for real property.* No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action."

On October 19, 1978, Lichty filed an action to establish an easement by necessity across a contiguous parcel of property owned by Sickels. Lichty's complaint sufficiently alleges an easement by necessity.[2] Sickels answered the complaint that as a matter of law Lichty's action 23 years after he acquired title is barred by section 318. The predecessors of both Lichty and Sickels obtained title to the two adjacent parcels from a common grantor in 1947. The conveyance to Lichty's predecessor left his parcel landlocked. Lichty obtained title at a tax sale in 1955.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] Among the allegations of Lichty's verified complaint is the following: "Plaintiffs parcel and defendants parcels are contiguous and were in the past owned by the same individual; plaintiff and defendants thus have a common grantor to their respective parcels; the conveyance to plaintiffs predecessors by said common grantor left plaintiff 'landlocked' so that plaintiff has no access to city streets and more particularly to Hillside Drive as disclosed by the attached plat map, thus leaving plaintiffs land shut off from access to a road to the outer world."
Sickels' answer denies the allegation.

Lichty argues the principles embodied in section 318 are unsuited to an action to establish an easement by necessity.

■■ We begin our analysis having in mind the rules that "[s]ummary judgment may only be granted if no material fact issue remains in the case. Where affidavits have been submitted by the opposing parties, any doubts as to whether summary judgment is proper should be resolved against the moving party. [Citation.]" (*Buehler* v. *Oregon-Washington Plywood Corp.* (1976) 17 Cal.3d 520, 526 [131 Cal.Rptr. 394, 551 P.2d 1226]); and "[w]hether a summary judgment should be granted turns on the trial court's consideration of ' "whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself . . . . The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial." ' (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 . . . .)" (*Smith* v. *Scrap Disposal Corp.* (1979) 96 Cal.App.3d 525, 528.)

Interestingly, the record before us contains no affidavits or declarations in support of or in opposition to the summary judgment motion. We consider the following characteristics of easements by necessity in determining whether there are issues of material fact and whether Sickles is entitled to judgment as a matter of law based upon the running of a limitations period.

■ An easement by necessity " 'arises by operation of law when a grantor conveys land that is completely shut off from access to any road by land retained by the grantor or by land of the grantor and that of a stranger. . . . A way of necessity exists only in case of strict necessity, that is, when the claimed way constitutes the only access to the claimant's property. . . .' " (*Reese* v. *Borghi* (1963) 216 Cal.App.2d 324, 331-332 [30 Cal.Rptr. 868], quoting from *Marin County Hospital Dist.* v. *Cicurel* (1957) 154 Cal.App.2d 294, 302 [316 P.2d 32]; see also *Tarr* v. *Watkins* (1960) 180 Cal.App.2d 362, 366-367 [4 Cal.Rptr. 293].) ■ An easement by necessity is an appurtenant easement and thus will pass as appurtenant to the estate when sold (*Kripp* v. *Curtis* (1886) 71 Cal. 62, 65 [11 P. 879]). ■ The easement by necessity only continues while the necessity exists (*ibid.*; and see *Cassin* v. *Cole* (1908) 153 Cal. 677, 679 [96 P. 277]).

Other important characteristics and foundational bases of easements by necessity are set out in *Reese* v. *Borghi, supra,* 216 Cal.App.2d 324, at page 331, as follows: " '[A] way of necessity does not rest on a pre-existing use but on the need for a way across the granted or reserved premises. A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound

public policy that lands should not be rendered unfit for occupancy or successful cultivation. . . .' [Quoting from 17A Am. Jur., Easements, § 58.] (P. 668.)

" 'Questions in respect of the permanency, apparency, and continuity of servitude, which are of importance in connection with easements implied because the servitude is obvious and apparently permanent, are not applicable to typical ways of necessity; and it is immaterial in respect of the latter whether the grant is voluntary or involuntary by operation of law. . . .' [Quoting from *id.*] (P. 670.)

". . . '[a] way of necessity rests on public policy often thwarting the intent of the grantor or grantee. Its philosophy is that the demands of our society prevent any man-made efforts to hold land in perpetual idleness as would result if it were cut off from all access by being completely surrounded by lands privately owned.' [Quoting from 2 Thompson on Real Property (1961 Replacement), § 362, p. 410.]"

On the question of when an easement of necessity may be asserted in court, treatises lead to the conclusion the assertion may be made by remote grantees in the chain of title long after the easement was created by the original common grantor.

In the annotation at 133 American Law Reports 1393, "Failure or delay of original grantee to assert or exercise right of way by necessity as precluding subsequent assertion or exercise," we find the following statement: "While the question raised by the subject of this annotation has been considered in but few cases, it appears safe to state that, at least in the absence of unusual circumstances, the *failure or delay of a grantee to assert or exercise a right of way by necessity* over his grantor's adjoining premises, where he cannot reach a highway from his property except over lands privately owned, *does not preclude him, or a remote grantee, from subsequently asserting such right.* The question has arisen most frequently where the original grantee failed to assert his right of way by necessity, and thereafter a remote grantee sought to exercise it." (Italics added.)

The annotation at 94 American Law Reports Third 502, "Unity of Title for Easement by Implication," contains the following passage (at p. 515, fn. 25): "Thus, the necessity must arise immediately upon severance, not out of any circumstances arising at a later time. However, that is not to say that once the way of necessity properly arises, it does not persist through subsequent conveyances, without [*sic*] remerger of title, of the subject parcels. It seems clear that the necessity must have been implicit in the first severance from that unity, and that that principle remains intact even within

the logic of the holding that if at one time there has been unity of title, *the right to a way of necessity may lie dormant through several transfers* of title and yet pass with each transfer as appurtenant to the dominant estate *and be exercised at any time by the holder of the title.* See 25 Am Jur 2d, Easements and Licenses § 35." (Italics added.)

In 25 American Jurisprudence Second, Easements and Licenses, section 35, at page 449, we find the same statement as above underscored in 94 American Law Reports Third, citing to section 95 of the Easements and Licenses subject, which states (at p. 501): "A way of necessity over remaining lands of the grantor, created by implied grant upon the severance of land, being appurtenant to the granted land, passes by each conveyance to subsequent grantees thereof. Hence, *a subsequent grantee of land* which is not used by the common owner at the time of the severance of the larger tract *may, when the use of such way becomes necessary to the enjoyment of the land, claim it under the remote deed of severance.*" (Italics added.)

A California Supreme Court case decided in May 1894, *Blum* v. *Weston,* (1894) 102 Cal. 362 [36 P. 778], is among the authorities cited in support of the underscored portion from American Jurisprudence Second. In *Blum,* the court rejected an argument by the owner of the servient estate that nonuse of the way from 1871 to 1890 (when the dominant owner took title) terminated it. The court answered that the way of necessity created as a result of a partition which occurred in 1871 became appurtenant to the land, and "the facts found having shown that a way of necessity once existed, it must be presumed to continue until some fact found by the court shows that the right no longer exists. . . . The way, having been created by the necessity for its use, cannot be extinguished so long as the necessity exists" (*id.,* at p. 369).

In a similar vein is the following statement of the rule found in 28 Corpus Juris Secundum, Easements, section 54, paragraph b, at pages 718 and 719: "While ordinarily a right of way of necessity continues until some other lawful way has been acquired, and cannot be extinguished so long as the necessity continues to exist, nevertheless, a way of necessity ceases as soon as the necessity to use it ceases. Accordingly, a right of way of necessity ceases when the owner of the way acquires a new means of access to his estate, as where he acquires other property of his own over which he may pass, or where a public way is laid out which affords access to his premises; and the fact that a former way of necessity continues to be the most convenient way will not prevent its extinguishment when it ceases to be absolutely necessary. However, in order to operate as an extinguishment of the way it must appear that the outlet by means of the new way is reasonably sufficient to the beneficial enjoyment of the dominant estate. A mere revo-

cable permission to use a way over the land of another person will not extinguish the right." (Fns. omitted; see also 28 Cal.Jur.3d, Easements and Licenses, § 22, pp. 64-65; 1 Bowman, Ogden's Revised Cal. Property Law [Ogden] (1974) § 13.28, pp. 557-559; 3 Miller & Starr, Current Law of Cal. Real Estate (1977) §§ 18.32-18.34, p. 317 et seq.; 10 Hagman-Maxwell, Cal. Real Estate Law and Practice (1983) § 343.23, pp. 343-34-343-38.)

At section 108 of the same treatise and subject, we find under the heading, "Time to Sue and Laches," the following summary statement (at p. 799): "The right to sue for interference with an easement may be lost by laches, or by failure to bring the action within the statutory period. Mere lapse of time does not ipso facto bar relief."

The text under the summary includes the following statement of rules: "Mere lapse of time in asserting his rights will not defeat plaintiff's action, where, during the period of delay, there has been nothing in his conduct, or any change of conditions, which would render the enforcement of the right inequitable or unjust to defendant; nor will the action be barred by laches where plaintiff had no knowledge of the encroachment complained of.

"*Statutory limitations.* The right to equitable relief against interference with an easement may be barred by a statute of limitations." (Fns. omitted.)

Pertinent to the issue of when suit may be brought, Ogden informs us: "To establish such a way, the grantee must show that at some time in the past, the land for whose benefit the way is claimed and the land in which the way is claimed belonged to the same individual. If this unity of ownership is shown to have existed, its *remoteness either in time or by reason of intervening conveyances apparently is immaterial.*" (Ogden, *supra,* Easements, § 13.28, p. 558; italics added.)

■ More directly on the question of limitations of actions to enforce easements by necessity through use of a quiet title action, which the parties concede is the type of action involved here, we find the following rules to be applicable: "An outstanding adverse claim amounting only to a cloud on title is a continuing cause of action, and a quiet title action is not barred by lapse of time until the hostile claim is asserted in some manner to jeopardize the superior title. So long as the adverse claim lies dormant and inactive, the owner of the superior title may not be incommoded by it and has the privilege of allowing it to stand indefinitely. Every day's assertion of the adverse claim gives a renewed cause of action to quiet title until the action

is brought." (43 Cal.Jur.3d, Limitation of Actions, § 85, Quieting Title, p. 127.)

And in *Muktarian v. Barmby* (1965) 63 Cal.2d 558, at pages 560 and 561 [47 Cal.Rptr. 483, 407 P.2d 659], the rules are stated: "Since *there is no statute of limitations governing quiet title actions as such,* it is ordinarily necessary to refer to the underlying theory of relief to determine which statute applies. [Citations.] In the present case, however, it is unnecessary to determine which statute would otherwise apply, for *no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property.* [Citations.] In many instances one in possession would not know of dormant adverse claims of persons not in possession. [Citation.] Moreover, even if, as here, the party in possession knows of such a potential claimant, there is no reason to put him to the expense and inconvenience of litigation until such a claim is pressed against him. [Citation.] Of course, the party in possession runs the risk that the doctrine of laches will bar his action to quiet title if his delay in bringing action has prejudiced the claimant. [Citations.] In this case, however, the trial court erred in holding that plaintiff's action was barred by the statute of limitations and thus did not reach the question of laches." (Fn. omitted; italics added; see also Hagman-Maxwell, Cal. Real Estate Law and Practice, *supra,* Quieting Title, § 370.34, pp. 370-28-370-29.)

▆ Given the characteristics of easements by necessity featuring instantaneous creation by operation of law at the time of the remote grant and continued existence of the easement through successive grants so long as the necessity continues, all founded on salutory public policy against permitting land to remain in perpetual idleness, it is not appropriate to fix a limitations period on actions to establish easements by necessity in the nature of quiet title actions such as this. There is inconsistency between on the one hand applying the limitations period and on the other hand giving effect to the rule that the easement terminates only when the necessity ceases. It is apparent application of the limitations period eliminates the possibility of carrying out the sound public policy basis for the easement by necessity. The policy of avoiding stale claims foundational to limitations statutes (see 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 225, p. 1083) does not outweigh the policy of freeing up land for beneficial use.

The situation here is much as that described in *Muktarian v. Barmby, supra,* 63 Cal.2d 558, where there is no reason to put the party to the expense and inconvenience of litigation until the activity adverse to the easement by necessity, threatening to cut it off, occurs (see also 43 Cal.Jur. 3d, Limitations of Actions, § 85, Quieting Title, p. 127, quoted above).

Looking at the underlying theory of relief involved here, a remote grant giving rise to an easement by necessity, we do not believe a limitations period starting at the date the plaintiff acquired title is applicable. It was error of law to grant the summary judgment on that basis. Nothing we say, of course, affects any assertions pertaining to issues such as the creation or continued existence of the easement by necessity, or laches (see *Mesmer* v. *Uharriet* (1916) 174 Cal. 110, 117 [162 p. 104]), that Sickles may seek to establish factually at a trial.

Judgment reversed.

Staniforth, J., and Butler, J., concurred.