**Gregory E. SHORT, Appellant,**

v.

**SOUTHERN UNION COMPANY, et al., Respondents.**

**No. WD 74096.**

Missouri Court of Appeals, Western District.

April 10, 2012.

See also 708 S.W.2d 194

Michael P. Joyce, Kansas City, MO, for appellant.

Roy C. Bash and Christopher L. Johnson, Kansas City, MO, for respondent Stadium Industrial Park Association, Inc.

Before Division One: CYNTHIA L. MARTIN, Presiding Judge, THOMAS H. NEWTON, Judge and ALOK AHUJA, Judge.

CYNTHIA L. MARTIN, Judge.

Gregory Short ("Short") appeals from the trial court's judgment that granted a directed verdict in favor of the defendants, Southern Union Company d/b/a Missouri Gas Energy ("Southern Union") and Stadium Industrial Park Association, Inc. ("Stadium Industrial"). Short claims that the trial court erred by concluding that the definition of "strict necessity" as used in section 228.342 [1] required Short to prove that his property could legally be put to an industrial use before he was entitled to the establishment of a private road to permit access to his landlocked property. Because we conclude that the trial court erroneously construed section 228.342, specifically the definition of "strict necessity" intended by the legislature, we reverse and remand.

### Factual and Procedural Background[2]

On August 8, 2008, Short, as the trustee for the Gregory E. Short Trust, purchased a tract of undeveloped property from Harold King ("King"). The tract is approximately 3.72 acres in size and is located at 7651 Interstate–70 ("Property"). The Property is landlocked. (*Appendix 1, attached*). It is bounded on the north by the Interstate–70 right of way. It is bounded on the west by two tracts owned and/or occupied by Jack Cooper Transport Co., Inc. ("Jack Cooper Transport") and Manchester Properties LLC ("Manchester Properties"). It is bounded on the south by two tracts known as Lot 1 Stadium Industrial Park and Lot 1 Stadium Industrial Park II. The parties stipulated at trial that Lot 1 Stadium Industrial Park is owned by Southern Union (which took title

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. On appeal from a court-tried matter, we view the facts in the light most favorable to the court's judgment. *Huff v. Integral Ins. Co.*, 354 S.W.3d 228, 229 n. 1 (Mo.App. W.D. 2011).

to the tract in 2007). Short and Stadium Industrial stipulated at trial that Lot 1 Stadium Industrial Park II is owned by D.M. Enterprises [3] (the developer of Stadium Industrial Park). Lot 1 Stadium Industrial Park is located immediately to the west of Lot 1 Stadium Industrial Park II.

Manchester Trafficway, a public thoroughfare, runs roughly north/south and lies to the west of the Jack Cooper Transport/Manchester Properties tracts. Those tracts have direct access, therefore, to Manchester Trafficway. Lot 1 Stadium Industrial Park and Lot 1 Stadium Industrial Park II do not abut Manchester Trafficway but have access to that public road through the use of a private road (hereinafter "Tract C"). (*Appendix 2, attached*). The Property does not abut Manchester Trafficway and has no direct access to Manchester Trafficway.

Tract C was established by a plat recorded by D.M. Enterprises in 1994. That plat commenced development of Stadium Industrial Park. The plat describes Tract C as a private street for ingress and egress to lots in Stadium Industrial Park. The Property is not a part of Stadium Industrial Park and has no legal right to use Tract C to access Manchester Trafficway. D.M. Enterprises conveyed title to Tract C to Stadium Industrial [4] in 2006.

Tract C connects in a perpendicular fashion to Manchester Trafficway and runs east along the southern boundary of the Manchester Properties tract. Tract C then runs roughly northeast to the south-east corner of Lot 1 Stadium Industrial Park (Southern Union's property) and then continues to run along the western boundary of Lot 1 Stadium Industrial Park II (D.M. Enterprises' property). Tract C ends at a point that is approximately 200–250 feet south of the southern boundary of the Property.

After his purchase, Short accessed the Property by traveling the length of Tract C from Manchester Trafficway, and then crossing north across 200–250 feet of paved area on either Lot 1 Stadium Industrial Park or Lot 1 Stadium Industrial Park II to the southern boundary of the Property. Short testified that Tract C was not marked as a private road when he bought the Property, and as a result, he believed he had the right to use the road. An aerial photograph introduced at trial reflects that the portion of Tract C extending from Manchester Trafficway to just south of Lot 1 Stadium Industrial Park is called (and thus presumably posted as) "East 35th Terrace." After about a year of using Tract C to access the Property,[5] Short was notified that he was using a private road without authorization.

■ Short filed a petition for the establishment of a private road to afford the Property access to a public road as a matter of strict necessity pursuant to section 228.342. Short named Southern Union and Stadium Industrial as defendants. The petition proposed that the Property be afforded access to Manchester Trafficway by use of the private road known as Tract

---

3. The record suggests that D.M. Enterprises is a Missouri general partnership.

4. The record suggests that Stadium Industrial is an association created to collect maintenance payments from the owners and occupiers of tracts within Stadium Industrial Park who are legally entitled to use Tract C, and to use those funds to maintain Tract C.

5. The record does not disclose the nature of Short's access to the Property during the time he used Tract C, *i.e.*, whether his access was on foot or vehicular. The record does reflect that on at least one occasion, Short accessed the Property across the I–70 right-of-way to place a bull dozer and a semi-truck on the Property. There is no dispute that I–70 is a limited access interstate that affords no access for ingress or egress to the Property.

C and by the establishment of an additional stretch of private road from the end of Tract C to the southern boundary of the Property. Short proposed two alternatives for this additional stretch of private road: either a 30–foot–wide private road running roughly north/south along the eastern boundary of Lot 1 Stadium Industrial Park (the property owned by Southern Union) ("Alternative I") (*Appendix 3, attached*), or a 30–foot–wide private road running roughly north/south along the western boundary of Lot 1 Stadium Industrial Park II (the tract owned by D.M. Enterprises) ("Alternative II"). (*Appendix 4, attached*).[6]

After Southern Union and Stadium Industrial each filed an answer and counterclaims,[7] Stadium Industrial filed a motion for summary judgment, arguing that Short's claims were barred by the ten-year statute of limitations described in section 516.010. In its motion, Stadium Industrial contended that Short's cause of action accrued, at the very latest, when King (Short's predecessor in title) filed a suit in 1982 against adjoining landowners seeking an easement of necessity to access the Property.[8] As more than ten years had passed since the King suit, Stadium Industrial argued that Short's petition for the establishment of a private road to access the Property was barred by the statute of limitations.

In response to Stadium Industrial's motion for summary judgment, Short claimed that because he used Tract C and land north of the end of Tract C to access the Property for over a year following his purchase, his cause of action to establish a private road did not accrue until he was advised he could no longer use Tract C. Short's petition to establish a private road was thus filed, according to Short, well within the ten-year statute of limitations.

A hearing on Stadium Industrial's motion for summary judgment was scheduled for the same day Short's petition was set for trial to the court. The trial court

6. The parties stipulated that Lot 1 Stadium Industrial Park II is owned by D.M. Enterprises. The parties stipulated that Tract C is owned by Stadium Industrial. There is some confusion, however, about whether the land over which the final stretch of private road described in Alternative II would run is owned by D.M. Enterprises or by Stadium Industrial given the parties' stipulation that "Defendants Southern Union and Stadium Industrial Park Association, Inc., are the owners of the tracts of land over which Short proposes a private road be established for access to the Short Property." D.M. Enterprises is not a party to this case. As we are remanding this matter for further proceedings that will require the trial court to situate a private road providing Short access from the Property to Manchester Trafficway, we caution the trial court to insure that the private road is situated on property that is owned by a party to the proceedings. *See* section 228.342 ("The owners of the real property over which the proposed private road shall pass shall be named as defendants.").

7. Prior to the entry of judgment, Stadium Industrial dismissed its counterclaims without prejudice. Southern Union never dismissed its counterclaims, but as discussed, *infra*, the unresolved counterclaims do not affect the propriety of this appeal.

8. King's suit sought the establishment of a private road as a matter of "strict necessity" under section 228.340, the predecessor to section 228.342. In the King suit, the trial court initially denied King's claim. However, on remand following appeal to this court, *King v. Jack Cooper Transport Co.*, 708 S.W.2d 194 (Mo.App. W.D.1986), the trial court entered a judgment awarding King an easement and appointing commissioners to assess damages to the adjoining landowners as required by statute. The adjoining landowners filed exceptions to the commissioners' award of damages. King thereafter voluntarily dismissed his suit on the day the damages were to be tried. As a result, the King lawsuit did not result in the entry of a final judgment establishing a private road to access the Property.

declared on the record that it was "going to deny the motion for summary judgment." A bench trial on Short's petition immediately followed.

The parties stipulated to certain facts on the record.[9] Then Short's counsel called two witnesses: Robert Parks, a civil engineer and surveyor, and Short. Parks's testimony concerned a survey that he completed in 2010 to ascertain the relationship of the properties surrounding the Property. Parks testified that there exists no access to the Property directly from a public road. Parks testified that the only realistic access to a public road for the Property required use of Tract C and the creation of a relatively short extension of private road from the end of Tract C to the southern boundary of the Property. Parks discussed two alternatives for this extension of private road: Alternative I (across Southern Union's property) and Alternative II (across D.M. Enterprise's property). Parks testified that the only other route that could be conceived would require the establishment of a private road from Tract C north along the undeveloped western boundary of Southern Union's property. According to Parks, this route was not feasible, however, because of rough terrain and topography.

Short testified about his use of Tract C to access the Property for about a year until he was informed by D.M. Enterprises that he was trespassing. Thereafter, Short could not access his Property from a public road. Short was asked about his plans for the Property. Short testified that he "envision[s] or anticipate[s] or hope[s]" to put the Property to a use typical of the rest of the area: industrial, industrial warehousing, or semi truck parking.

During cross-examination, Short admitted that he did not "have a specific use in mind" for the Property. Short stated that he had not yet requested the City of Kansas City to authorize a particular use of the Property because he does not yet have access to the Property. Short admitted that he would not be able to use the Property for an industrial purpose unless he complies with the City of Kansas City's zoning ordinances. Short was asked about the availability of utilities on the Property. Short testified that there were no water lines on the Property and that, to obtain access to public water, he would have to secure an easement. Short testified that there was a sewer line on the north side of his Property. Short testified that he had not yet inquired about the availability of electric service but that he knew there to be a three-phase electric line on the Property.

At the conclusion of Short's case-in-chief, Stadium Industrial and Southern Union moved for a directed verdict. They argued:

> [E]ven if this Court were to determine that a private road should be established to allow Mr. Short access in whatever direction, he still can't use the property because he can't get an easement for water, electrical, sewer, or natural gas service. Without establishing that, [he has] failed to meet the elements of the statute to show that there is any use permitted by law to which this piece of ground can remain [sic].

During the parties' discussion of the motion for directed verdict, the trial court noted that "it has been clearly demonstrated that [Short] doesn't have ingress and egress, that he may be entitled to that, *but there is the other part of the statute that has to be contended with, and that is*

9. The parties stipulated to facts regarding the identity of the parties, the legal descriptions of the parcels of property at issue, and the owners of the parcels of property at issue.

*that there be a demonstration that the property not only will be put to legal use but can be put to legal use."* (Emphasis added.)

The trial court denied the motion for directed verdict at the close of the plaintiff's case, noting its desire to let the defendants proceed with their evidence as the trial court was "not entirely sure how the Court of Appeals is going to interpret the language of [section 228.342]." The defendants, however, elected to rest without putting on any evidence.

The defendants then renewed their motion for directed verdict. At the same time, Stadium Industrial asked the trial court to reconsider its motion for summary judgment based on the statute of limitations, arguing that the ten-year statute of limitations began to run when the Property was first rendered landlocked.[10] The trial court held that "[t]he Court's decision on the motion for summary judgment stands. That's still denied."

The trial court then granted the defendants' motion for directed verdict. The trial court found "a failure of proof ... *there is no showing of whether or not this property can be put to a legal usage. And the difficulty is that the words '[strict] necessity' are tied to that concept."* (Emphasis added.)

On June 6, 2011, the trial court entered its written judgment ("Judgment") which held, in pertinent part:

[D]efendants made a motion for directed verdict based on [Short's] failure to meet his burden of showing strict necessity as defined in RSMo § 228.342. For good cause shown and being fully ad-

vised in the premises, the Court GRANTS defendants' motion for directed verdict....

On the same day this Court took up the matter of [Stadium Industrial's] Motion for Summary Judgment filed December 30, 2010. For good cause shown and being fully advised in the premises, the Court DENIES Defendant's Motion for Summary Judgment.

Short appeals.[11]

### Finality of Judgment

■ We have a duty to determine *sua sponte* whether we have jurisdiction over this appeal. *West v. Sharp Bonding Agency, Inc.,* 327 S.W.3d 7, 10 n. 5 (Mo.App. W.D.2010). We acquire jurisdiction as soon as the trial court issues a "final judgment." Section 512.020(5). The general rule is that a judgment is final if it disposes of all the issues with regard to all of the parties and leaves nothing for future determination. *Ameriquest Mortgage Co. v. Gehrig,* 245 S.W.3d 239, 241 (Mo.App. W.D.2007).

Prior to trial, Stadium Industrial dismissed its counterclaims. However, Southern Union's two counterclaims remained pending at the time of trial. The Judgment resolved Short's claim for the establishment of a private road against Southern Union and Stadium Industrial. The trial court's Judgment did not, however, expressly resolve Southern Union's pending counterclaims.

■ Though the pendency of counterclaims will ordinarily negate the finality of a trial court's judgment, if "a judgment

10. Parks testified on cross-examination that the Property became landlocked when the right of way for Interstate 70 was acquired by condemnation. However, the date this occurred was not elicited from Parks or through any other evidence at trial.

11. Stadium Industrial has filed a Respondent's brief. Southern Union has not filed a Respondent's brief. Though not required to file a brief, its failure to do so prevents Southern Union from participating in oral argument. Local Rule XXIII.

implicitly resolves issues raised by a defendant's counterclaim, the judgment may constitute a final judgment, even though it makes no explicit reference to the counterclaim." *Hackathorn v. Four Seasons Lakesites, Inc.*, 959 S.W.2d 954, 957 (Mo.App. S.D.1998).

■ Southern Union's first counterclaim requested a declaratory judgment that Short has no right to a private road because he cannot demonstrate "strict necessity." This counterclaim was no more than the functional equivalent of a denial of Short's claim. Southern Union's second counterclaim argued that *if* Short was permitted a private road across Southern Union's property, Short would be unjustly enriched, entitling Southern Union to compensation. This counterclaim necessarily required Short to prevail on his claim and

was mooted by the Judgment denying Short the relief of a private road.[12] We conclude that Southern Union's counterclaims were obviously and implicitly resolved by the trial court's Judgment. Therefore, the Judgment is final, and we have jurisdiction to entertain this appeal.[13]

## Standard of Review

■ In a court-tried case, a motion for directed verdict "submits the issue for decision on the merits and is considered to be a motion for judgment pursuant to Rule 73.01."[14] *The Cadle Co. v. Shearer*, 69 S.W.3d 122, 124 (Mo.App. W.D.2002) (citations omitted). "Accordingly, this court reviews not for submissibility, but under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)."[15] *Id.* (citations omitted).

12. The subject of Southern Union's second counterclaim is actually a part of the statutory requirements which must be satisfied by Short as a condition of securing a final judgment establishing a private road. Had the trial court granted Short the relief of a private road to access the Property, section 228.358 would only have permitted the issuance of an *interlocutory order* to that effect, and the order would have remained interlocutory until commissioners appointed by the trial court assessed the defendants' damages in light of the establishment of the private road. *See* sections 228.355, 228.358. If exceptions had been taken to the commissioner's award, the matter of damages would then have been tried to a jury. Section 228.358. Only upon completion of this process would the trial court have been authorized to enter a *final judgment* establishing the private road and awarding the defendants' damages. *Id.*

As the assessment and award of damages to defendants over whose property a section 228.342 private road is established is an integral and indispensible part of a plaintiff's claim to establish a private road, Southern Union did not need to assert its second counterclaim to preserve its right to recover said damages.

13. Though we so conclude, the better practice is for a judgment to expressly address the disposition of all claims and counterclaims

that are pending at the time of its entry if the trial court intends the judgment to represent a final judgment for purposes of appeal.

14. Rule 73.01(b) applies to cases tried without a jury and states in pertinent part that "[a]fter the plaintiff has completed presentation of plaintiff's evidence, the defendant may move by motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief." Rule 73.01(c) provides that in response to a Rule 73.01(b) motion, "[t]he court shall render the judgment it thinks proper under the law and the evidence." Here, the motion for directed verdict was not granted until the close of all of the evidence, arguably rendering the trial court's decision to grant the motion for directed verdict nothing more than the trial court's entry of judgment at the conclusion of trial. In either case, whether the trial court was responding to a Rule 73.01 motion or simply entering its Judgment following the conclusion of trial, our standard of review is the same in this court tried case.

15. In contrast, in a jury tried case, a defendant's motion for directed verdict is to be granted "only if the plaintiff fails to make a submissible case." *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 472 (Mo.App. W.D.2005). Our review of the grant of a

Thus, the trial court's judgment shall be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or misapplies the law. *Burg v. Dampier*, 346 S.W.3d 343, 352 (Mo.App. W.D.2011) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "The evidence and all reasonable inferences are viewed in the light most favorable to the judgment." *Id.* (citing *Asamoah–Boadu v. State*, 328 S.W.3d 790, 793 (Mo.App. W.D.2010)).

### Analysis

Short's sole point on appeal concerns the trial court's interpretation of "strict necessity" as used in section 228.342. Short contends that the trial court erred in construing section 228.342 to require him to prove that the Property could lawfully be put to an industrial use before strict necessity for the establishment of a private road could be shown. In response, Stadium Industrial argues that the trial court correctly construed section 228.342 and that the trial court's Judgment can be otherwise affirmed because the ten-year statute of limitations applicable to Short's claim has run.

■ We conclude that the trial court's construction of section 228.342 was legally erroneous. The trial court erroneously interpreted "strict necessity" to require Short to prove not only that the Property lacked a right of lawful access to a public road, but also that the Property could be lawfully used for an industrial purpose. The trial court also erroneously failed to recognize that even if "strict necessity" could be interpreted to require Short to establish a lawful use for the Property, the simple ability to physically access the

Property in its natural state is a "lawful use."

We also conclude that the trial court's Judgment cannot be otherwise affirmed on the grounds of Stadium Industrial's affirmative defense of the statute of limitations. The "strict necessity" requiring the establishment of a private road to the Property is of a continuing nature. The statute of limitations to assert a claim for establishment of a private road under section 228.342 cannot run so long as strict necessity exists.

### Construction of Section 228.342

■ Section 228.342 allows for the establishment or widening of a private road. It provides, in relevant part:

> A *private road may be established* or widened *in favor of any owner* or owners *of real property* for which there is *no access,* or insufficiently wide access, from such property *to a public road if* the private road sought to be established or widened is *a way of strict necessity.* As used in this section, the term "strict necessity" shall include the necessity to establish or widen a private road in order to utilize the property for the uses permitted by law. . . .

(Emphasis added.) Missouri courts have consistently interpreted section 228.342 to require a plaintiff to "show that he owns the land, that there exist no public roads through or alongside the land and that the private road petitioned for is mandated by strict necessity." *Blue Pool Farms, LLC v. Basler*, 239 S.W.3d 687, 690 (Mo.App. E.D.2007) (citing *Beery v. Shinkle*, 193 S.W.3d 435, 441 (Mo.App. W.D.2006)). This principle simply restates, of course, the criteria described in the *first sentence* of section 228.342. For this purpose, Mis-

---

defendant's motion for directed verdict in a jury tried case requires us to review the evidence and all reasonable inferences in the

light most favorable *to the plaintiff* (as opposed to the judgment) and to disregard all evidence to the contrary. *Id.*

souri courts have defined "strict necessity" as "'the lack of a legally enforceable right to use a practicable way to and from a person's land, either private or public.'" *Id.* (quoting *Kirkpatrick v. Webb*, 58 S.W.3d 903, 907 (Mo.App. S.D.2001)). Under this definition, if property has no physical access to a public road and no other legally enforceable right to use a practicable way to a public road (such as an express easement, for example), then strict necessity for a private road has been established. *See, e.g., Beery*, 193 S.W.3d at 441–42 (holding that where an express easement created by agreement afforded a property owner a legally enforceable right of ingress and egress, "strict necessity" under section 228.342 is not established).

In this case, the parties stipulated that Short was the owner of the property,[16] and evidence presented by Short indicated that the property was landlocked and without direct access, or an easement or other legally enforceable right permitting access, to Manchester Trafficway, the only public road servicing the area. The trial court found on the record that "it has been clearly demonstrated that [Short] doesn't have ingress and egress." Employing the definition of "strict necessity" consistently articulated by our appellate courts, Short demonstrated that the establishment of a private road was a "strict necessity."

The trial court concluded otherwise, however. The trial court believed that Short's demonstrated lack of access to a public road did not end the inquiry. The trial court observed that no Missouri case has ever interpreted the second sentence of section 228.342, and thus a legal question existed as to whether that sentence requires a plaintiff to prove that property will and can be put to a "legal use" as a an essential precursor to establishing "strict necessity." After considering the matter,

the trial court reached the conclusion that "strict necessity" requires a plaintiff to demonstrate not only the criteria described in the first sentence of section 228.342 but also that a private road is being sought to permit an intended lawful use of the property, the subject of the second sentence of section 228.342. Here, Short testified that he might, *in the future*, attempt to use the Property for an industrial purpose but conceded he could not presently do so because the Property lacked required city approvals and essential utilities. The trial court concluded, therefore, that Short had failed to establish "strict necessity" as defined in section 228.342.

It is true that *Blue Pool Farms, Beery, Kirkpatrick*, and other Missouri cases which have defined "strict necessity" have cited exclusively to the first sentence of section 228.342 and have not addressed the effect, if any, of the second sentence of section 228.342 on that definition. Arguably, the fact that Missouri courts have consistently defined "strict necessity" without regard to the second sentence of section 228.342 is itself instructive and of precedential import. However, we must acknowledge the trial court's concern that the absence of any discussion of the second sentence of section 228.342 leaves open the possibility that the impact of the sentence on the definition of "strict necessity" has simply not been raised before.

Our task, therefore, is to determine whether the trial court erroneously declared the law by concluding that the first and second sentences of section 228.342 combine to define "strict necessity" to require not only that property has a demonstrated lack of access to a public road, but also that the property can and will be put

---

**16.** As the owner of the Property, Short necessarily had a legally enforceable right to use it.

to a specific lawful use. This is a matter of first impression.

Statutory interpretation is a question of law that is reviewed *de novo. City of Kansas City ex rel. Lafarge N. Am. Inc. v. Ace Pipe Cleaning, Inc.,* 349 S.W.3d 399, 403 (Mo.App. W.D.2011). The primary rule of statutory construction is to ascertain the intent of the legislature by construing words used in the statute in their plain and ordinary meaning unless the legislature has defined particular words or phrases. *State ex rel. Nixon v. Estes,* 108 S.W.3d 795, 798 (Mo.App. W.D. 2003). "If a term is defined within a statute, a court must give effect to the legislature's definition." *Hardt v. Vitae Found., Inc.,* 302 S.W.3d 133, 138 (Mo.App. W.D. 2009) (citing *Jones v. Dir. of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992)). The legislature's definition " 'supersedes the commonly accepted dictionary or judicial definition and is binding on the courts.' " *Estes,* 108 S.W.3d at 798 (quoting *In re Estate of Hough,* 457 S.W.2d 687, 691 (Mo. 1970)).

The second sentence of section 228.342 provides that "[a]s used in this section, the term 'strict necessity' **shall include** the necessity to establish or widen a private road in order to utilize the property for the uses permitted by law." (Emphasis added.) The trial court construed this sentence as an essential element of the legislature's definition of "strict necessity." We must determine, therefore, the intended meaning of the phrase "shall include." Did the legislature intend the phrase to limit "strict necessity" as to deprive property with a demonstrated lack of access the establishment of a private road unless a use permitted by law for the property can be proven? Or did the legislature intend the phrase to enlarge "strict necessity" as to permit property new or widened access to accommodate a use permitted by

law? As explained below, we conclude that the legislature intended the latter construction.

"While the plain meaning of the word 'include' may vary according to its context *in a statute,* it is ordinarily used as a term of enlargement, rather than a term of limitation." *Estes,* 108 S.W.3d at 800 (emphasis added); *see also Kieffer v. Kieffer,* 590 S.W.2d 915, 918 (Mo. banc 1979) ("The term 'including' is sometimes ambiguous and its meaning may vary according to the **context of the statute** in which it appears. However, generally the term is one of enlargement rather than limitation.") (emphasis added). Our research reveals that "include" in the context of statutes has almost universally been construed by Missouri courts as a term of enlargement, as providing an illustrative, non-exclusive, example, or as both. *See, e.g., Estes,* 108 S.W.3d at 800 (interpreting "include" as used in section 407.010(7) which defined the terms trade or commerce to *"include* any trade or commerce directly or indirectly affecting the people of this state" as a term of enlargement and not as an expression of legislative intent to "mean *only* economic activity having such effects"); *In re S.J.S.,* 134 S.W.3d 673, 677 (Mo.App. E.D.2004) (interpreting "include" as used in section 453.080 which states that lawful and actual custody *"shall include* a transfer of custody pursuant to the laws of this state" as a term of enlargement and not as a legislative expression of "the exclusive means by which a party can exercise lawful and actual custody of a child"); *Kieffer,* 590 S.W.2d at 918 (interpreting "including" as used in section 452.355 which states that in considering an award of attorney's fees a court may award reasonable fees "after considering all relevant factors *including* the financial resources of both parties" as a term of enlargement); *Union Elec. Co. v. Cuivre River Elec.*

*Coop., Inc.,* 571 S.W.2d 790, 794 (Mo.App. 1978) (interpreting "including" as used in section 1.100(1) which states that the population of a political subdivision based on the last previous decennial census shall control "for the purpose of representation or other matters *including* the ascertainment of the salary of any county officer" as a term of enlargement, noting that "in most instances the term 'including' is one of enlargement"); *St. Louis County v. State Highway Comm'n,* 409 S.W.2d 149, 152–53 (Mo.1966) (interpreting "to include" as used in a ballot proposition which states that "said highways" are *"to include"* certain expressways therein designated as a term of enlargement). *But see State on Huffman v. Sho–Me Power Co-op.,* 354 Mo. 892, 191 S.W.2d 971, 976–77 (Mo. banc 1946) (interpreting "including" as used in section 14406 which permits co-operative associations "for the purpose of conducting any agricultural or mercantile business ... *including* the buying, selling, manufacturing, storage, transportation or other handling or dealing" as "intended to qualify and limit the scope of the phrase 'any agricultural or mercantile business,'" as to hold otherwise would render the enumeration following the word "including" meaningless).

Applying this authority, we can fathom no reason to construe the phrase "shall include" in the context it is used in section 228.342 as other than a term of enlargement, or as prefacing an illustrative example. Nothing about the contextual use of the phrase "shall include" suggests otherwise. Nor would our construction of the phrase "shall include" as a term of enlargement render any part of section 228.342 meaningless. Had the legislature intended the second sentence of section

228.342 to serve as the limited and exclusive definition for "strict necessity," it could easily have accomplished this intent through use of the unequivocal phrase "shall mean" or "shall be defined for purposes of this statute to mean." We conclude that the legislature did not intend the second sentence of section 228.342 to limit the concept of "strict necessity." Specifically, we conclude that the legislature did not intend the second sentence of section 228.342 to be applied to deprive property with a demonstrated lack of access the establishment of a private road merely because the owner cannot prove that he intends, and is able, to put the property to a specific lawful use.[17]

This conclusion is supported by the legislative history of section 228.342. *See Kieffer,* 590 S.W.2d at 918 (holding that "[w]here an ambiguity exists, in fact or by construction, it is proper to consider the history of the legislation"). Prior to the 1991 enactment of section 228.342, sections 228.340, RSMo 1986, and 228.350, RSMo 1986, provided, respectively, for the establishment of private roads and for the widening of existing private roads. Both statutes were first enacted in 1939. Section 228.340 required the establishment of a private road for property not connected to a public road and required the plaintiff to establish "that the private road sought to be established is a way of strict necessity." Section 228.350 required the widening of an existing private road (including a private road previously established under section 228.340) if the plaintiff established "that the widening of the private road so sought is a way of strict necessity."

In *Hill v. Kennoy, Inc.,* 522 S.W.2d 775 (Mo. banc 1975), our Supreme Court inter-

---

17. The trial court was clearly focusing on a lawful use other than leaving the Property in its natural state, as evidenced by its reliance on the testimony elicited from Short during cross-examination that he could not use the Property at the present time for an industrial purpose because it lacked zoning and access to critical utilities.

preted "strict necessity," as used in section 228.340, to require a trial court to establish a private road for the benefit of any property owner who establishes he has no legally enforceable right to use any other alternative route. *Id.* at 777. In so holding, the court noted that "[t]he right to a private road over the land of another exists only by way of necessity, and not convenience." *Id.* The clear holding in *Hill* was that "strict necessity" *as used in section 228.340* could not be established if the plaintiff has " 'a practicable way to and from his land, either private or public ... way as here meant, is a legal way, to use which one has a legal right, which may be enforced, and which may not be rightfully interfered with.' " *Id.* (quoting *Evans v. Mansfield,* 364 S.W.2d 548, 551 (Mo.1963)).

Defining "strict necessity" as limited to circumstances where *no* direct access or other legally enforceable way to access a public road exists was facially incompatible, however, with section 228.350, which authorized the widening of an *existing* private road if "strict necessity" was established. This court in *Reid v. Jones,* 594 S.W.2d 339, 343–44 (Mo.App. W.D.1980), addressed the conflict and concluded that:

> [T]he language [in section 228.350] referring to "a way of strict necessity" in connection with the widening is not necessary to limit the statute in its application to those roads strictly necessary for access. To give the legislative language any meaning, it must refer to a standard determining the necessity for widening. By analogy, the standards for establishment of a way of necessity should apply. The parties and the court may consult *Hill v. Kennoy, Inc.,* 522 S.W.2d 775 (Mo. banc 1975) and *Sutter v. Sims,* 563 S.W.2d 533 (Mo.App.1978) for recent expression of those standards. The court, upon the evidence presented, should bal-

ance the hardship and injury to the defendants against the necessity ... for the widening. The extent of such widening is, by [section] 228.350, left to the commissioners.

Thus, under sections 228.340 and 228.350, "strict necessity" included the right to establish a private road to permit access where none existed (section 228.240) *and* the right to improve or widen an existing private road to permit a lawful use of property (section 228.350).

When the legislature enacted section 228.342 in 1991, it repealed sections 228.340 and 228.350. At the time of its enactment, section 228.342 provided, in pertinent part, as follows:

> A private road *may be established* in favor of any owner or owners of real property *for which there is no access* from such property to a public road and if the private road sought to be established is a way of strict necessity.

(Emphasis added.) The 1991 version of section 228.342 thus limited "strict necessity" to the need to establish access where none existed, the subject matter of former section 228.340, and neglected to address the prospect of widening an existing means of access if needed for a lawful use, the subject matter of former section 228.350. This was, it appears, an unintended oversight, as the legislature quickly amended section 228.342 in 1993 [18] to incorporate the subject matter of former section 228.350 as follows:

> A private road may be established *or widened* in favor of any owner or owners of real property for which there is no access, *or insufficiently wide access,* from such property to a public road if the private road sought to be established *or widened* is a way of strict necessity.

**18.** Amended section 228.342 was effective in 1994.

(Emphasized language added by the 1993 amendment.) Mindful that "strict necessity" under sections 228.340 and 228.350 had distinct meanings depending upon whether access was being sought where none existed or whether improved access was being sought to permit a use permitted by law, the legislature also added what is now the second sentence of section 228.324 as follows:

As used in this section, the term "strict necessity" shall include the necessity to **establish or widen a private road** in order to utilize the property for the uses permitted by law.

(Emphasis added.)

 In light of this legislative history, we conclude the legislature intended the term "strict necessity" in section 228.342 to encompass both the meaning ascribed to the term as it was used in former section 228.340 and the meaning ascribed to the term as it was used in former section 228.350. Thus, we construe the definition of "strict necessity" as used in section 228.342 to require the establishment of a private road where no access exists (consistent with the definition of "strict necessity" in *Blue Pool Farms, Beery,* and *Kirkpatrick*) and to require the establishment of improved private access, even if some access already exists, sufficient to use property for an intended lawful purpose (consistent with *Reid*).

Other statutes within the scheme of statutes addressing the establishment of private roads support this construction of section 228.342. *See Motor Control Specialities, Inc. v. Labor & Indus. Relations Comm'n,* 323 S.W.3d 843, 850 (Mo.App. W.D.2010) ("In discerning the legislature's intent, 'we consider the statute in the context of the entire statutory scheme on the

same subject' to avoid unjust, unreasonable, or absurd results.") (quoting *Sheedy v. Mo. Highways & Transp. Comm'n,* 180 S.W.3d 66, 72 (Mo.App. S.D.2005)). Section 228.352 advises that after a section 228.342 petition has been filed, "the court shall conduct a nonjury hearing during which the parties may submit evidence pertaining to the allegations of the petition and to the proposed location of the private road." Section 228.352 goes on to describe the trial court's *three options* at the conclusion of the aforesaid hearing:

If the court determines ... that there is access to a public road or that the way sought is not a way of strict necessity,[19] then the petition shall be dismissed. If the court determines that there is no access to a public road and the way sought is a way of strict necessity, then it shall further determine the location of a private road that is situated so as to do as little damage or injury and cause as little inconvenience as practicable to the defendants. If the court determines upon a petition to widen a private road that there is not sufficiently wide access to utilize the property for the uses permitted by law, then it shall further determine the location at the side or sides of the existing private road of the widening so as to do as little damage or injury and cause as little inconvenience as practicable to the defendants.

The three options described permit, in practical terms, (i) dismissal of a petition because there is a legally enforceable way of access available; or (ii) grant of a petition to establish access where no legally enforceable means of access exists; or (iii) grant of a petition seeking improved or enhanced access, even though access exists, to permit a particular lawful use. These options are consistent with our con-

---

19. As might be the case if an express easement creates a legally enforceable right of

ingress and egress. *See Beery,* 193 S.W.3d at 441–42.

struction of "strict necessity" as used in section 228.342 to include either the establishment of non-existent access or the improvement of existing access if needed to permit a lawful use of property.

Having determined the intended definition of "strict necessity," we necessarily conclude that the trial court erroneously denied Short the relief of establishment of a private road. The record certainly supports the conclusion that Short did not demonstrate "strict necessity" as anticipated by the second sentence of section 228.342. The record unequivocally established, however, (and the trial court so observed) that Short did demonstrate that the Property has no lawful ingress or egress to a public road-and thus "strict necessity" as anticipated by the first sentence of section 228.342.

■ Even were we to conclude (which we do not) that the second sentence of section 228.342 was intended by the legislature to require proof of an intended lawful use of property as an element of strict necessity, Short sustained this burden. A property owner's mere ability to be physically present upon his property in its natural state is a "lawful use."

In light of the foregoing discussion, we conclude that the trial court erroneously entered its Judgment in favor of Stadium Industrial and Southern Union. Section 228.352 required the trial court to "enter an interlocutory order for the establishment ... of the private road *at the location determined by the court*." (Emphasis added.) On remand, the trial court will be required to comply with the statutory procedures described in section 228.342 *et seq.* In that regard, the trial court should enter an interlocutory order "designat[ing] which party or parties shall be responsible for the construction, maintenance and repair of the private road and *[setting] out the nature and scope of the parties' rights to the use and enjoyment of the private road.*" Section 228.352 (emphasis added). These determinations are to be made mindful of the legislature's directive that private roads are to be "situated so as to do as little damage or injury and cause as little inconvenience as practicable to the defendants." *Id.; see also* section 228.345 (providing that a proposed private road "shall not exceed forty feet in width and shall be situated so as to do as little damage or injury and cause as little inconvenience as practicable to the owner or owners of the real property over which the private road shall pass").

■ Here, Short proposed two alternative locations for a private road. Both proposals utilize Tract C (which is owned by Stadium Industrial) but vary in the proposed location of a short extension from the end of Tract C to the southern boundary of the Property, with Alternative I traveling over property owned by Southern Union and Alternative II traveling over property owned by either D.M. Enterprises or Stadium Industrial. We do not read section 228.352 to limit the trial court as it situates the private road required by section 228.342 to these alternatives, either as to their precise location or their proposed dimensions.[20] Once strict

---

**20.** See footnote 6, where we caution the trial court that the location of any private road established must be on property that is owned by a party to the case, as required by section 228.342. We further observe, for clarity, that the possibility of alternative routes of necessity across the property of unnamed landowners is not a relevant inquiry under section 228.342. "While plaintiffs may have a choice between surrounding landowners against whom they might have proceeded for the establishment of a private road, neither [the statute] nor the case law indicates that one landowner can defeat a plaintiff's right to a way of necessity simply by pointing to another against whom plaintiff might have sought re-

necessity has been established, the general location of the private road is for the trial court to determine. *Beery*, 193 S.W.3d at 441. "In making its determination, the court must weigh and consider the respective benefits and burdens to the parties." *Id.* Given the "strict necessity" established by Short is, pursuant to the first sentence of section 228.342, for a mere right of access where none otherwise exists, and not for access designed to permit a particular use permitted by law (the subject of the second sentence of section 228.342), the location, dimensions, and rights to use, of the private road should be contoured accordingly.[21]

### Affirming the Judgment on the Alternative Grounds of the Statute of Limitations

■ Stadium Industrial argues that we must affirm the trial court's Judgment if it is correct on any reasonable theory sup-

ported by the evidence. *See Eversole v. Woods Acquisition, Inc.*, 135 S.W.3d 425, 427–28 (Mo.App. W.D.2004). Stadium Industrial argues that Short's claim for the establishment of a private road is barred by the ten-year statute of limitations described in section 516.010. The statute of limitations was pleaded as an affirmative defense in Stadium Industrial's answer as required by Rule 55.08. Stadium Industrial argues that the right to establish a way of necessity attaches to a particular owner of property and that since more than ten years has passed from the time the Property first became landlocked and/or from the time King filed his lawsuit to seek the establishment of a private road, Short's ability to establish a private road is time barred. The trial court denied Stadium Industrial's request for judgment on the basis of the statute of limitations at the conclusion of trial.[22] We conclude that the

---

lief." *Hill*, 522 S.W.2d at 778; *see also Moran v. Flach*, 752 S.W.2d 956, 959 (Mo.App. E.D.1988) (Statute "does not direct that alternate ways of necessity across other adjoining land owner's property be considered."); *Lewis v. Hilkerbaumer*, 599 S.W.2d 7, 9 (Mo.App. E.D.1980) ("[I]t is for the plaintiffs to determine against whom they will proceed in seeking a roadway."); *Moss Springs Cemetery Ass'n v. Johannes*, 970 S.W.2d 372, 377 (Mo. App. S.D.1998) ("[T]he defendant in a case under [section 228.342] cannot force a plaintiff to seek a roadway from another landowner regardless of the expense.").

21. We are not suggesting that Short cannot, in the future, seek to establish "strict necessity" as anticipated by the second sentence of section 228.342 to establish new or widened access to the Property to permit the Property to be used for a particular purpose permitted by law. Nor are we suggesting that all owners of landlocked property must bring two suits: one to establish basic access and one to establish new or widened access sufficient to accommodate an intended lawful use. Clearly, a single suit could be utilized to accomplish both purposes. However, a single suit is not required.

22. The trial court first denied Stadium Industrial's motion for summary judgment on the basis of the statute of limitations *at the commencement of trial.* This ruling preserved nothing for appeal. It is settled law in Missouri that except where the denial of summary judgment is inextricably intertwined with a corresponding grant of an opposing motion for summary judgment, "[d]enial of a motion for summary judgment is not subject to appellate review, even when an appeal is taken from a final judgment and not from the denial of a motion for summary judgment." *State ex rel. Mo. Div. of Transp. v. Sure–Way Transp., Inc.*, 884 S.W.2d 349, 351 (Mo.App. W.D.1994). The rationale for this rule was articulated by our Supreme Court in *Parker v. Wallace*, where the court concluded:

The matter of the propriety of the court's action in *overruling* a motion for summary judgment is not an appealable order.... *Upon that ruling, the issues raised by the pleadings are still in the case,* and *it is upon those issues, when decided and if timely and properly presented, that an appeal lies.* 431 S.W.2d 136, 137–38 (Mo.1968) (citations omitted) (bolded emphasis added). Thus, once the trial court denied Stadium Industri-

trial court did not err, and that Stadium Industrial's statute of limitations defense is without merit.

▪▪▪▪ Under common law, "a way of necessity ... cannot be extinguished so long as the necessity continues to exist." *Attaway v. Davis*, 288 Ark. 478, 707 S.W.2d 302, 303 (1986); *see also Carroll v. Carroll*, 355 S.W.3d 463, 468 (Ky.Ct.App. 2011); *William C. Haak Trust v. Wilusz*, 949 N.E.2d 833, 837 (Ind.Ct.App.2011); *Litchy v. Sickels*, 149 Cal.App.3d 696, 703, 197 Cal.Rptr. 137 (Ct.App.1983); *Berkeley Dev. Corp. v. Hutzler*, 159 W.Va. 844, 229 S.E.2d 732, 736 (1976), *overruled on other grounds by O'Dell v. Stegall*, 226 W.Va. 590, 703 S.E.2d 561 (2010). "It has long been recognized that an easement by necessity is appurtenant.... What this means in practice is that the right to an easement of necessity does not expire or attach itself to a particular owner...." *William C. Haak Trust*, 949 N.E.2d at 837.

▪▪▪▪ Given the appurtenant nature of a way of necessity, and that the duration of an easement of necessity is limited by that necessity, it is recognized that "a claim for an easement by necessity is not subject to a statute of limitations." *Carroll*, 355 S.W.3d at 468; *see also William C. Haak*

*Trust*, 949 N.E.2d at 837 ("[T]here is no statute of limitations on easements of necessity...."); *Attaway*, 707 S.W.2d at 303 (holding it is not appropriate to fix a limitations period on actions to establish easements by necessity, because the right to access arises from an owner's "status as a landlocked owner and is of a *continuing nature*") (emphasis added); *Lichty*, 149 Cal.App.3d at 703, 197 Cal.Rptr. 137.

▪▪▪▪ The aforesaid cases address the common law remedy of acquiring an easement by necessity. They are nonetheless instructive here as "Missouri law appears to afford two remedies to owners of real estate with no means of ingress or egress: (1) by the statutory method under section 228.340 [23] or (2) by the common law easement by necessity." *King*, 708 S.W.2d at 196. Though the statutory and common law remedies vary slightly with respect to the required origin of the necessity,[24] they both require demonstration of the need to establish a right of access as a matter of necessity.

No Missouri case has addressed the statute of limitations for either a common law claim to an easement of necessity or a statutory claim to establish a private road by way of strict necessity. We are persuaded, however, that Missouri should

---

al's motion for summary judgment, "the issues raised by the pleadings," which included the affirmative defense of the statute of limitations raised in Stadium Industrial's answer, remained in the case *to be tried*, and otherwise appropriately preserved by Stadium Industrial on the trial record, as an essential condition of our consideration of the defense as an alternative basis for affirming the Judgment. At the conclusion of trial, Stadium Industrial asked the trial court to "reconsider its motion for summary judgment." Stadium Industrial's request was not properly framed, as at that point the case had been fully tried. Stadium Industrial's request was in reality a request for the entry of judgment in its favor based on the affirmative defense of the statute

of limitations as demonstrated by the evidence presented at trial. Correspondingly, the trial court's denial of the request was necessarily a rejection of the affirmative defense on its merits based on the evidence presented at trial.

23. As we address herein, section 228.340 was repealed in 1991, and in its place, section 228.342 was enacted.

24. "A showing of strict necessity under section 228.340 is not to be confused with the common law easement by strict necessity allowed only upon proof of prior unity of title and subsequent deprivation of access to a public road." *King*, 708 S.W.2d at 196.

adopt the reasoning articulated in the aforesaid precedent addressing the appurtenant character of a way of necessity and the corresponding lack (or continuing nature) of the statute of limitations so long as the necessity exists. This conclusion is wholly consistent with the underpinning of the "continuing wrong rule" which has been applied by Missouri courts in cases involving claims for damage or injury to persons or property.

■ Where the factual circumstances giving rise to a cause of action are of a continuing nature, "Missouri recognizes the 'continuing or repeated wrong rule.'" *Lake St. Louis Cmty. Ass'n v. Oak Bluff Preserve*, 956 S.W.2d 305, 309 (Mo.App. E.D.1997) (internal quotation marks omitted). "The continuing wrong rule was adopted by our Supreme Court in *Davis v. Laclede Gas Co.*, 603 S.W.2d 554 (Mo. banc 1980)." *Id.* at 310. "Under this rule, 'each continuation or repetition of wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with the occurrence.'" *Id.* (quoting *Vogel v. A.G. Edwards & Sons, Inc.* 801 S.W.2d 746, 755 (Mo.App. E.D.1990)).

In *Lake St. Louis Community Association*, our Eastern District applied the continuing wrong rule to a failure to maintain pedestrian ramps and the grounds at a marina, finding that "[a] failure to maintain is a continuing wrong." *Id.* Similarly, in *Cook v. DeSoto Fuels, Inc.*, our Eastern District noted that "'[a] continuing trespass upon real property creates separate causes of action, which are barred only by the running of the statute against the successive trespasses, and not by the running of the statute from the time of the original trespass.'" 169 S.W.3d 94, 105 (Mo.App. E.D.2005) (quoting *Cacioppo v. Sw. Bell Tel. Co.*, 550 S.W.2d 919, 925 (Mo.App. 1977)).

■ The facts in the case before us, though addressing an appurtenant condition of property and not a claim for personal injury or property damage, are sufficiently analogous to the facts in *Lake St. Louis Community Association* and *Cook* to support reliance on the continuing wrong rule. We conclude, therefore, that so long as "strict necessity" as required by section 228.342 exists,[25] its effect on property is of an appurtenant and continuing nature. As a practical matter, therefore, the statute of limitations cannot run so long as the necessity exists. *Carroll*, 355 S.W.3d at 468; *William C. Haak Trust*, 949 N.E.2d at 837; *Attaway*, 707 S.W.2d at 303; *Lichty*, 149 Cal.App.3d at 703, 197 Cal.Rptr. 137.[26] Thus, "'the right to a

---

**25.** We remind that "strict necessity" can exist either because property has no access (directly or through some other legally enforceable means such as an express easement) or because property has access that is deemed insufficient to permit a use permitted by law. Since the second sentence of section 228.342 expressly anticipates securing new or widened private access for a particular lawful use even if property already has some available access, it follows that the "continuing strict necessity" in this context may well run on a different continuum than the "continuing strict necessity" to establish access where none otherwise exists as anticipated by the first sentence of section 228.342.

**26.** We are not foreclosing in this Opinion the possibility that facts or circumstances may exist in a future case sufficient to permit the conclusion that "strict necessity" has ceased to exist in a manner sufficient to terminate the "continuing wrong" and thus to commence the running of the statute of limitations. Nor have we foreclosed by this Opinion the possibility that facts or circumstances may exist in a future case sufficient to permit the conclusion that present and subsequent owners have acquired property inalterably and legally bound by its status as landlocked or possessed of limited access. We note only that the facts and circumstances in this case

way by necessity may lay dormant through several transfers of title yet pass with each transfer as appurtenant ... and be exercised at any time by the holder of title thereto.'" *William C. Haak Trust,* 949 N.E.2d at 837 (quoting *Finn v. Williams,* 376 Ill. 95, 33 N.E.2d 226, 228 (1941)).

█ Here, nothing in the evidence suggests that strict necessity for access to the Property as anticipated by the first sentence of section 228.342 ever ceased to exist between the time the Property first became landlocked to the present, a matter on which Stadium Industrial bore the burden of proof. Because the condition of necessity is appurtenant to the Property, it is immaterial that several owners held title while the way of necessity existed, or that a prior owner attempted and then abandoned an effort to establish a private road by way of strict necessity. It is also immaterial that Short acquired the Property with arguable notice of its landlocked condition. The trial court's rejection of the statute of limitation defense was supported by the law. Stadium Industrial's request that we affirm the Judgment on the alternative grounds that Short's claim was barred by the statute of limitations is denied.

## Conclusion

We reverse the Judgment of the trial court. We remand this matter for further proceedings consistent with this Opinion.

All concur.

do not permit or require us to reach such conclusions.