**Karen L. TADYCH, Respondent,**

v.

**John D. HORNER, Appellant.**

No. WD 72408.

Missouri Court of Appeals,
Western District.

March 8, 2011.

Dennis Owens, Kansas City, MO, for Appellant.

Tony V. Jones, Kansas City, MO, for Respondent.

Before Division I: MARK D. PFEIFFER, Presiding Judge, and THOMAS H. NEWTON and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

John Horner ("Horner") appeals the judgment of the Circuit Court of Jackson County ("trial court") ordering the partition sale of property that he owned as a co-tenant with Karen Tadych ("Tadych") and outlining the required disbursement of proceeds from that sale. On appeal, Horner argues that the trial court's judgment, particularly the trial court's disbursement award, is not supported by substantial evidence and is against the weight of the evidence. We disagree and affirm.

### Statement of Facts[1]

On September 1, 2004, Horner and Tadych purchased a ten-acre parcel of land in Lone Jack, Missouri, for $79,900. Horner and Tadych made a down payment of $40,000, and the previous owner financed the remaining purchase price, with Horner and Tadych executing a promissory note and deed of trust to secure the loan. Horner and Tadych attempted to take title to the property as husband and wife.[2] After purchasing the land, the couple began to construct a house on the property. The structure was to serve as a home for the couple and their children. Horner and Tadych also contemplated using the house for a Christian ministry.[3] In October of 2005, before construction on the house was completed, Horner and Tadych separated and Tadych moved to Oklahoma. At that time, the structure at the Lone Jack property was framed and roofed but still needed substantial exterior and interior work to be habitable.

On April 22, 2008, Tadych filed a petition for partition of the property. A trial was held on June 22–23, 2009. At trial, Horner testified and presented evidence and testimony regarding the improvements he had made to the property after Tadych left. The trial court concluded that Horner and Tadych held the property as tenants in common and ordered the appointment of commissioners to determine if it was possible to equitably divide the property in kind or if the property must be sold and the proceeds divided. The commissioners' report, filed on December 11, 2009, opined that the partition of the property in kind was not possible without prejudice to the property's ownership by tenancy in common. The trial court entered judgment on April 1, 2010. In its judgment, the trial court ordered the property sold and the proceeds divided evenly between Horner and Tadych after: (1) taxes on the property were paid; (2)

---

1. We review the evidence in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Rissler v. Heinzler*, 316 S.W.3d 533, 536 (Mo.App. W.D. 2010).

2. Horner and Tadych had participated in a marriage ceremony in 1997 but failed to get a marriage license. Subsequently, when Tadych filed for marital dissolution, a court determined that the marriage was legally void.

3. The couple's plans for the home were vague but revolved around providing housing for people in need, possibly orphaned or abused children.

costs of the partition litigation were satisfied; (3) Horner was paid $33,664.40 as reimbursement for his payments made on the promissory note after Tadych left; and (4) Horner was paid $50,000.00 to reimburse him for costs incurred by him to improve the property after Tadych left. Horner timely filed this appeal. Tadych filed a motion for attorney's fees.

## Standard of Review

When reviewing a court-tried case, we affirm the judgment of the trial court " 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.' " *Grossman v. St. John*, 323 S.W.3d 831, 833–34 (Mo.App. W.D.2010) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). In evaluating the trial court's factual determinations, we defer to the trial court because it "is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984). " 'As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony.' " *Zink v. State*, 278 S.W.3d 170, 192 (Mo. banc 2009) (quoting *Blue Ridge Bank & Trust Co. v. Hart*, 152 S.W.3d 420, 426 (Mo.App. W.D.2005)). This is the case even where the testimony of a witness is not contradicted by other testimony as " 'it is well settled that the trial court is free to believe or disbelieve all, part or none of the evidence, including disbelieving evidence that is uncontroverted.' " *Simpson v. Simpson*, 295 S.W.3d 199, 204 (Mo.App. W.D.2009) (quoting *Beery v. Shinkle*, 193 S.W.3d 435, 443 (Mo. App. W.D.2006)); *see also Keen v. Camp-*

*bell*, 249 S.W.3d 927, 931 (Mo.App. S.D. 2008). We examine the evidence in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Rissler v. Heinzler*, 316 S.W.3d 533, 536 (Mo.App. W.D.2010). Finally, we must "exercise caution when setting aside a judgment on the ground that it is against the weight of the evidence and only do so with a firm belief that the judgment is wrong." *Grossman*, 323 S.W.3d at 834.

## Analysis

Horner does not challenge the trial court's finding that he and Tadych are co-tenants with an equal share in the property or the determination that the property should be sold and the proceeds divided. Instead, in his single point on appeal, Horner argues that the trial court's judgment awarding him $50,000 in reimbursement for his improvements to the property (after Tadych left) was inadequate, not supported by substantial evidence, and against the weight of the evidence. Horner argues that uncontroverted evidence proved that the actual value of the improvements that he made was $330,000.

A party to a partition proceeding is entitled to reimbursement for expenditures on the property for taxes, insurance, and necessary repairs and improvements. *Clark v. Dady*, 131 S.W.3d 382, 390 (Mo. App. W.D.2004). To properly qualify for partition sale reimbursements, improvements: (1) must be made in good faith; (2) must be necessary and substantial; (3) must materially enhance the value of the property; and (4) the circumstances reveal that it would be equitable to reimburse the party. *Id.* Unless a co-tenant explicitly or implicitly agrees to the improvements, they must be made for the substantial benefit of all the owners of the property, not just the individual in possession of the

property. *Hartog v. Siegler*, 615 S.W.2d 632, 636 (Mo.App. E.D.1981).

At trial, Horner testified and presented the testimony of three individuals who had performed work on the house after Tadych left (and was not welcomed back to the property):[4] Richard Armenia, Thaddius Luokkala, and Horner's father.

Horner presented what he claimed to be approximately $80,000 in invoices and receipts[5] for work performed on the house after Tadych left, which included work for items such as the children's bedrooms.[6] Horner also claimed to have spent an additional $20,000 to $25,000 on improvements for which he did not have receipts. Horner testified that his personal labor on the house should be valued at $232,000.[7]

With the exception of Tadych, who was also called to testify, Horner's witnesses testified regarding the work they had done for Horner and provided summaries that were offered into evidence describing payments received for their work. While Armenia did complete a summary of the work he had done for Horner, on cross-examination it became clear that Armenia's summary was not based upon invoices utilized at the time the work was performed. Instead, it was a document created at Horner's request in preparation for trial. Similarly, Luokkala's summary of the amount that had been paid to him by Horner was not based upon records created at the time he was paid. Cross-examination revealed that Luokkala was paid cash (i.e. no cancelled checks for verification) by Horner, Luokkala did not re-

4. Tadych testified at trial that she was given limited access to the property after she moved out and that her appraiser was not even allowed on the property, accounting for what Horner deems a "drive-by appraisal" based upon "inaccurate information" that led to an inflated appraisal of $415,000. Then, at oral argument, Horner endorsed the $415,000 appraisal figure, because he suggests that we should subtract the purchase price of $79,000 and do the math to calculate the difference between those two figures to arrive at the correct value to be attributed to Horner's efforts to improve the property after Tadych left. To do so, however, would require us to ignore the fact that the parties do not dispute that the house had been completely framed *prior* to Tadych's departure (i.e. costs had been incurred by *both* parties to "improve" the house up to that point in time), a factor (among other factors, such as the principle that property may increase in value over time and Horner cannot claim to be exclusively responsible for that increase in value related to "time") that we must presume the trial court took into consideration when arriving at its conclusion as to the separate and independent added value of Horner's work on the house *after* Tadych's departure.

5. Horner testified that he got a different total each time he calculated the value of the re-

ceipts but that the values were consistently around $80,000. Our review of Horner's receipts and invoices shows significant discrepancies towards Horner's claimed total receipt and invoice calculation. For example, some of the exhibits reflect that Horner submitted *quotes* from contractors as if they were *paid receipts*. Additionally, Horner included a copy of one receipt twice, a copy of both an *invoice* and a *receipt* for the *same* work, and also introduced two pages of a *quote* as separate *invoices*. All of these duplicate items had separate exhibit numbers.

6. Horner testified about creating elaborately designed religious-themed bedrooms for himself and his children, such as faux glaze on the walls of one of the children's bedrooms to give it a cave-like appearance representative of the tomb of the burial of Jesus Christ. Horner further testified to similar religious-themed rooms in the house and custom tile work in his bathroom that was also religiously themed.

7. Horner did not maintain any sort of log for days he worked on the house and, instead, estimated the number of hours that he worked on improvements to the house after Tadych's departure, multiplying those hours by $35 per hour, the rate that Horner believed he should be entitled to.

port any such cash payments as income on his tax return, and the summary that detailed the total amount paid to him was one that *Horner* had prepared in anticipation of trial. That summary was based on a rough estimate of the weekly hours Luokkala worked, multiplied by *Horner's recollection* of the number of weeks and hours Luokkala had worked on the project.[8] Horner's father testified to work he performed on the house but admitted that he worked on the project in a volunteer capacity.

In large part, Horner's "uncontroverted" evidence at trial required the trial court to weigh its credibility. Horner's "uncontroverted" evidence relied upon: invoices and receipts; other invoices and receipts that were the product of work summaries created by Horner in preparation for trial (not prepared at the time the work was allegedly performed); and, Horner's self-serving testimony of the time and value of work he personally performed on the house.

The trial court weighed the credibility of Horner's evidence of the value of the improvements he had made to the property after Tadych's departure and concluded that Horner had met his burden of proving that he had performed $50,000 of improvements to the property that were done in good faith, were necessary and substantial, materially enhanced the value of the property, and for which it was equitable to reimburse Horner for those improvements—but those improvements only. The trial court, simply put, did not find that Horner's evidence was either credible or substantial enough to support improvement reimbursements for any other claimed expenditures or hours of labor performed to improve the property. As noted earlier, we "exercise caution when setting aside a judgment on the ground that it is against the weight of the evidence and only do so with a firm belief that the judgment is wrong." *Grossman,* 323 S.W.3d at 834. We do not have a firm belief that the judgment below is wrong or that the trial court erred in weighing the evidence. Instead, we find that there is substantial evidence to support the trial court's judgment and the judgment is not against the weight of the evidence.

Horner's sole point on appeal is denied.

### Respondent's Motion for Attorney Fees

Both section 528.530[9] and Rule 96.30 provide for a "reasonable fee to the attorney instituting the action in partition." Rule 96.30. Pursuant to section 528.530, the trial court awarded attorney's fees of $10,496.00 to Tadych's counsel for their work on this case at the trial level. In respondent Tadych's motion to this court, she now seeks additional attorney's fees in the amount of $28,743.50 for work incurred after judgment was entered in this case.[10] However, both section 528.530

---

8. Luokkala also testified that he lived on the property and paid rent to Horner to do so. Tadych's counsel argued at trial that the rental value of the property should be assessed against Horner's claims for improvements. Tadych personally testified that, in her estimation, the rental value of the property was $3,000. There is no record in the trial court's finding that it accounted for rent in reaching its judgment. Horner asserts that the trial court could not consider the value of rents because Tadych did not include a request for such consideration in her petition. However,

a specific claim for the offset value of rents is generally not necessary because it is "an incident of a partition action." 59A Am.Jur.2d *Partition* § 111 (2003).

9. All statutory citations are to RSMo 2000, as updated through the 2010 cumulative supplement, unless otherwise indicated.

10. Specifically Tadych's attorneys assert that the value of their legal services was $18,940.50 after judgment was entered, but

and Rule 96.30 are predicated on the theory that the attorney who instituted the partition action acts on behalf of *both* parties. *Higgins v. Olson,* 991 S.W.2d 216, 219 (Mo.App. E.D.1999). Because both parties benefit from the work of the attorney who handles the partition case (i.e. both receive partition sale proceeds), the defendant "should not be permitted to escape the common burden, and throw upon the plaintiff the whole of it." *Arthaud v. McFerrin,* 156 S.W.2d 641, 642 (Mo.1941) (internal citations and quotations omitted). These fees are typically limited to "such work as would be required in an uncontested suit." *Id.* An exception to this rule exists where the defendant is uncooperative and unduly litigious in his opposition to the partition action. *Nelson v. Hotchkiss,* 601 S.W.2d 14, 21 (Mo. banc 1980); *Munday v. Thielecke,* 290 S.W.2d 88, 90–91 (Mo.1956).

■ Such is not the case in the present appeal. Horner has never contested Tadych's right to compensation for her interest in the property but, instead, simply believed that the trial court's judgment awarded Tadych an unreasonably high amount of compensation for her interest. Horner's appeal, though ultimately unsuccessful, was based upon a legitimate claim of error. In the absence of vexatious action on the part of the defendant "the amount of those fees will be determined by the amount of work the attorney conducted towards the partition for the benefit of *both* parties." *Cooper v. Murphy,* 276 S.W.3d 380, 385 (Mo.App. E.D. 2009) (emphasis added). In an action for partition, the work that benefits both parties includes "preparing the court's orders, assisting the sheriff or special commissioner to prepare the notices, advertising the sale, ensuring potential buyers for the sale, preparing the deeds and other documents prior to the appeal, and $9,759.00 for their

after the sale, and disbursing the proceeds of the sale." *Ward v. Ward,* 640 S.W.2d 477, 479 (Mo.App. E.D.1982).

Tadych fails to demonstrate vexatious action on the part of Horner in this appeal nor how the actions of her attorney have benefited Horner in any way on appeal. Instead, Tadych's motion seeks to assign the entire cost of her counsel in this adversarial portion of the partition action to the proceeds of the partition sale. Tadych's request for attorney's fees is denied.

### Conclusion

There is substantial evidence to support the trial court's judgment, and it is not against the weight of the evidence. Accordingly, we affirm the judgment.

THOMAS H. NEWTON and ALOK AHUJA, Judges, concur.