

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| PAUL C. FERGUSON, | ) | |
| | ) | **WD76487 and** |
| Appellant-Respondent, | ) | **WD76521** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| R. KENNETH EWING AND | ) | |
| DOROTHY A. EWING, | ) | **July 29, 2014** |
| | ) | |
| Respondent-Appellants. | ) | |

**Appeal from the Circuit Court of Callaway County, Missouri**
**Honorable Carol Ann England, Judge**

**Before Division Three:  Gary D. Witt, P.J.,**
**Joseph M. Ellis, and Thomas H. Newton, JJ.**

Mr. Paul C. Ferguson appeals the trial court's award of $2,000 for the repair of a division fence.  Mr. R. Kenneth Ewing and Mrs. Dorothy A. Ewing cross-appeal.  We affirm and remand.

## Factual and Procedural History

This is a fencing dispute between adjoining landowners—Mr. Ferguson and Mr. R. Kenneth Ewing and Mrs. Dorothy A. Ewing (the Ewings)—whose land shares a boundary line.  In August 2011, Mr. Ferguson's attorney sent a letter to the Ewings to notify them that Mr. Ferguson had completed the

construction of a lawful fence on his boundary portion, pursuant to section 272.020,[1] and demanded that they pay for the cost of constructing their portion of a new fence. The Ewings replied that there was no need for a new fence because they had already built a portion of the fence on their property, and because they no longer kept livestock and had no future plans to keep or corral livestock or any other animals.

In December 2011, Mr. Ferguson filed a petition with the circuit court for a neutral resolution, pursuant to section 272.060.1.[2] The Ewings filed a counterclaim against Mr. Ferguson for trespass, damage to their portion of the fence, and the unlawful removal of fencing and posts from their property.

---

[1] Statutory references are to RSMo 2000 and the 2013 supplement, unless otherwise stated. Section 272.020 defines a "lawful fence" as follows:

> 1. Any fence consisting of posts and wire or boards at least four feet high which is mutually agreed upon by adjoining landowners or decided upon by the associate circuit court of the county is a lawful fence.

> 2. All posts shall be set firmly in the ground not more than twelve feet apart with wire or boards securely fastened to such posts and placed at proper distances apart to resist horses, cattle and other similar livestock.

[2] Section 272.060.1 states:

> Whenever the owner of real estate desires to construct or repair a lawful fence, as defined by section 272.020, which divides his or her land from that of another, such owner shall give written notice of such intention to the adjoining landowner. The landowners shall meet and each shall construct or repair that portion of the division fence which is on the right of each owner as the owners face the fence line while standing at the center of their common property line on their own property. If the owners cannot agree as to the part each shall construct or keep in repair, either of them may apply to an associate circuit judge of the county who shall forthwith summon three disinterested householders of the township or county to appear on the premises, giving three days' notice to each of the parties of the time and place where such viewers shall meet, and such viewers shall, under oath, designate the portion to be constructed or kept in repair by each of the parties interested and notify them in writing of the same. Such viewers shall receive twenty-five dollars each per day for the time actually employed, which shall be taxed as court costs.

2

In April 2012, the court appointed three "disinterested householders" (Householders) to designate the portions of the fence to be constructed by each party, along with a cost estimate. The Householders determined that each party would each be responsible for building and maintaining 1,880 linear feet of fencing, at a total estimated cost of $14,602.80.

After the Ewings still failed to build their portion of the fence, Mr. Ferguson filed a petition with the court to authorize its construction. In the petition, Mr. Ferguson requested the following: that the court issue an order authorizing him to construct the Ewings' portion of the fence; that the costs be recorded in each owner's deed; that he be granted a defense to trespass, pursuant to section 272.110,[3] to construct and maintain the fence; and that he be granted a judgment for the cost of construction chargeable to the Ewings, along with court costs and attorney fees.

A hearing was held. In April 2013, the trial court entered judgment in favor of Mr. Ferguson. The trial court found that "some portions" of the Ewings' segment of shared fencing were not statutorily compliant. It awarded Mr. Ferguson $2,000 to bring the Ewings' portion of the shared fence within compliance "by ensuring they insert posts and fasten them to the fence in any location where fence posts are more than twelve feet apart . . . and ensure fence and posts are at least four feet high." It required both parties to maintain their

---

[3] Section 272.110 states: "Every person owning a part of a division fence shall keep his or her portion of the same in good repair according to the requirements of this chapter, and may enter upon any land lying adjacent thereto for such purpose."

respective portions of fencing within compliance of section 272.110 in the future.  It assessed the $75 Householders' fee as costs to the Ewings and denied their counterclaim, but it did not address attorney fees.   Mr. Ferguson appeals, and the Ewings cross-appeal.

## Standard of Review

When reviewing a court-tried case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  *Tadych v. Horner*, 336 S.W.3d 174, 177 (Mo. App. W.D. 2011).  We defer to the trial court's factual determinations because it "is in a better position not only to judge the credibility of witnesses and the persons directly, but also . . . other trial intangibles which may not be completely revealed by the record."  *Id.* (internal quotation marks and citation omitted).  Evidence is examined "in the light most favorable to the judgment," and we "disregard all contrary evidence and inferences."  *Id.*  Lastly, when setting aside a judgment, we must exercise caution and only do so when we firmly believe that it is wrong.  *Id.*

## Legal Analysis

### *Mr. Ferguson's Appeal*

Mr. Ferguson contends that this is a matter of first impression because "Missouri's fencing law statutes underwent a major change in 2001, and, to date, there has been no case law interpreting and applying the same."  Mr. Ferguson is correct in this assessment, as there is no existing case law that has

4

interpreted this segment of Chapter 272 since it was amended in 2001.[4] We review statutory interpretations *de novo*. *Short v. S. Union Co.*, 372 S.W.3d 520, 532 (Mo. App. W.D. 2012). "The primary rule of statutory construction is to ascertain the intent of the legislature by construing words used in the statute in their plain and ordinary meaning[,] unless the legislature has defined particular words or phrases." *Id.* (internal citation omitted). For terms defined within statutes, "a court must give effect to the legislature's definition." *Id.* (internal quotation marks and citation omitted). A statutory definition "supercedes the commonly accepted dictionary or judicial definition and is binding on the courts." *Id.* (internal quotation marks and citation omitted).

Mr. Ferguson raises two points. In the first point, he argues that the trial court erred in awarding him $2,000 to repair the Ewings' portion of the shared fence because the court violated Missouri law by granting equitable relief that was neither (1) specifically requested in his pleadings, nor (2) tried by the parties' express or implied consent. He claims that his petition requested that

---

[4] Before 2001, two fencing laws would potentially apply to adjoining landowners who had ***not*** mutually agreed on costs for the construction and maintenance of partition fencing, depending on whether the county was classified as "local option" or "non-local option." *See* Craig R. Heidemann, *Fencing Laws in Missouri: Confusion, Conflict, Ambiguity and a Need for Change*, 63 MO. L. REV. 537, 548-49 (Spring 1998).

In 2001, Missouri's fencing laws (found in Chapter 272) were changed. Now, there are "general fence law" counties, such as Callaway, and "local option fence law" counties. The general law is contained within sections 272.010 to 272.200, and the local option law is found in sections 272.210 to 272.370. *See generally* Steven F. Matthews, *Missouri Fencing and Boundary Laws*, University of Missouri Extension, http://extension.missouri.edu/p/G810 (discussing the history of Missouri's fencing laws) (revised May 2008; accessed July 21, 2014). *See also* Joe Koenen, *Missouri's Fencing and Boundary Laws: Frequently Asked Questions*, University of Missouri Extension, http://extension.missouri.edu/p/G811 (June 2011; accessed July 21, 2014). The general fence law was again updated in 2010. *Id.* at 1.

the court issue him an order to *build* the portion of the shared fence that the Ewings had failed to maintain, and not that he be awarded money to *repair* it. As the prevailing party, he contends that he should have instead been awarded $7,301.40 (half of the Householders' $14,602.80 estimate) to construct the Ewings' portion of the fence, "with said costs constituting 'a lien on [the Ewings'] real estate.'"

Based on a review of relevant sections of Chapter 272—including sections 272.020, 272.060, and 272.070—by their plain and ordinary meaning, we are not convinced that a "lawful" fence is necessarily a "new" fence. Moreover, an aggrieved party does not always receive the judgment for which he specifically prays. Instead, the remedy of equitable relief must be "adequate," based on "the particular facts and circumstances in each case." *Easley v. Easley*, 333 S.W.2d 80, 86 (Mo. 1960). In its judgment, the trial court specifically stated that the award of $2,000 should be used to bring the Ewings' portion of the shared fence in compliance by adding various fence posts. Although substantially less than the amount Mr. Ferguson requested, it would likely enable him to render the existing fence statutorily compliant. Thus, Mr. Ferguson's first point is denied.

In the second point, Mr. Ferguson argues that the trial court erred in failing to award him reasonable attorney fees "because legitimate public policy rationales support the mandatory award of attorney's fees and court costs given to a prevailing party under [Section] 272.070." Section 272.070 states:

6

If either party fails to construct or repair his or her portion of the fence in accordance with the provisions of section 272.060 within a reasonable time, the other may petition the associate circuit court of the county to authorize the petitioner to build or repair the fence in a manner to be directed by the court. If the court authorizes such action, the petitioner **shall** be given a judgment for that portion of the total cost of the fence which is chargeable as the other party's portion of the fence, **court costs and reasonable attorney's fees**. Any such judgment shall be a lien on the real estate of the party against whom the judgment may be given.

(Emphases added). Missouri courts generally follow "the American Rule that each party bears the burden of their own attorney's fees." *Wally & Co., L.C. v. Briarcliff Dev. Co.*, 371 S.W.3d 880, 885 n.4 (Mo. App. W.D. 2012). One exception is where a statute specifically authorizes the awarding of attorney fees to the prevailing party. *Id*

Section 272.070 specifically authorizes the awarding of attorney fees and court costs to the prevailing party. Furthermore, this directive includes the word, "shall," which many courts have interpreted to be defined as mandatory. *U.S. Cent. Underwriters Agency, Inc. v. Hutchings*, 952 S.W.2d 723, 725 (Mo. App. E.D. 1997). *But see Frye v. Levy*, No. SC 93471, 2014 WL 3107299, at *4-5 (Mo. banc July 8, 2014) (discussing the perameters of the definition of "shall" to sometimes be interpreted as "may," depending on the language contained in a given statute). Here, the statutory language is unambiguous. Thus, the trial court erred in failing to award attorney fees to Mr. Ferguson as the prevailing party. Mr. Ferguson's second point is granted.

7

*The Ewings' Cross-Appeal*

The Ewings raise two points. In the first point, they argue that the trial court erred in awarding Mr. Ferguson $2,000 to repair the fence because the court, Mr. Ferguson, and the Householders all failed to comply with current law. They contend that a judgment under section 272.070 may only be obtained by fulfilling "all the statutory conditions" of section 272.060, and that the judgment should not stand because "they followed the procedures under the repealed 272.060 and not the statute then in effect." The Ewings further contend that the trial court followed the "wrong procedure" in appointing the Householders, based on a pre-2001 interpretation of section 272.060. They claim that the pre-2001 version of the statute "provided a process for an individual who had already built part of an enclosure fence to be reimbursed half the costs," and that the Householder's role was that of an appraiser of the value of the existing fence. They further claim that, under section 272.070, Mr. Feguson would only be authorized to construct or repair their portion of the fence if the Ewings failed to act within a resonable time after receiving notice, and that they were not provided such notice.

Section 272.060, in its current form, requires the following: (1) written notice from the party seeking the construction or repairing of fencing to the adjoining landowner; (2) a meeting between the landowners to determine segments that each will construct or repair; (3) in the event that an agreement cannot be reached, an application to an associate circuit judge for assistance in

obtaining a resolution via the appointment of three Householders; (4) after three days' notice to the parties, an assessment by the Householders to determine segments of fencing and cost estimates for which each landowner will be responsible; and (5) written notification of these determinations to the court and each landowner.  § 272.060.1.

Here, Mr. Ferguson contacted the Ewings in writing about the fence. After more than two months, he received no response.  He later petitioned the trial court to appoint three Householders.  Both Mr. Ferguson and the Ewings suggested Householder candidates to the court. Two of the three appointed Householders were suggested by the Ewings. Once appointed, the Householders made their determinations, which they provided in writing to the parties and the court.  Nothing in the record indicates that the Ewings were not provided adequate notice of any of these events.  The Ewings' apparent refusal to respond to Mr. Ferguson's written letter with an in-person meeting does not lead to a determination of a lack of compliance with the statute; certainly, the legislature did not intend for the terms of this statute to automatically fail to be satisfied for a lack of a meeting between the parties when one apparently refuses to meet with the other.  Thus, the Ewings have failed to establish that the current requirements of section 272.060 were not followed.  Accordingly, the trial court did not err in determining that Mr. Ferguson was authorized to repair the fence, pursuant to section 272.070.  The Ewings' first point is denied.

In the second point, the Ewings argue that the trial court erred in its apportionment of responsibility for fence repair because the determination was based on the court's adoption of "the erroneous division of the shared boundary fence made by the [H]ouseholders." The Ewings contend that the Householders' report was "defective" because it was based on incorrect boundary lines[5] and did not clearly stipulate the portions for which each party would be responsible. They claim that the total distance of linear feet of required fencing was based on figures that preceded the sale of a portion of their property. They assert that the correct figure attributed to them should not have been 1,880 feet. Due to this alleged inaccuracy, the Ewings argue that, were this judgment to stand, they would be required to repair and maintain fencing on property they no longer own. They suggest that the proper remedy would be to reverse the trial court's judgment and remand the case so that they may be granted an "opportunity to bring the correct portion of the shared fence into compliance with the statute."

In the judgment, the trial court determined that each party would be responsible for the one-half of the shared fence line to their right if they were standing in the center of their common property line on their own property, and that each adjoining landowner "would be responsible for the maintenance of that half of the fence which is to their right." This directive is based on current

---

[5] The Ewings claim that "the north-south boundary line was no longer a shared boundary between the parties at the time of the Householders' [r]eport because [they] had sold their property in section 21 to a third person who was not a party to the case."

10

property ownership, and it clearly stipulates the segments of fencing for which each owner is responsible. Moreover, the trial court awarded Mr. Ferguson $2,000 to repair the fence, instead of $7,301.40 for half of the Householders' estimated construction costs for a new fence. This shows that the amount of the award was not based solely on the Householders' estimate. For these reasons, the fencing directive was clear and appropriate. Thus, the Ewings' second point is denied.

## Conclusion

For the above reasons, we affirm the trial court's award of $2,000 to Mr. Ferguson and remand for a determination of reasonable attorney fees.

/s/THOMAS H. NEWTON
Thomas H. Newton, Judge

Witt, P.J., and Ellis, J. concur.

11