

# Missouri Court of Appeals

## Southern District

### Division One

RONALD G. COBLE, SR., and )
TAMARA L. COBLE, )
)
   Appellants/Respondents, )
)
vs. ) No. SD33713 and SD33722
) Consolidated
ROBERT CRAIG TAYLOR, and )
VIRGINIA GAIL TAYLOR, ) FILED: February 1, 2016
)
   Respondents/Cross Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark Powell, Judge

## AFFIRMED

Ignoring a lawful partition fence, Defendants' bull Ferdinand crossed onto Plaintiffs' farm and got into their heifers, which were too young to safely calve.[1] Plaintiff Ron Coble mounted an ATV and, with his son, was directing Ferdinand back home when the bull charged, flipped and got atop the ATV, pinning Mr. Coble and injuring him.

---

[1] We refer to the parties in their trial court positions: Mr. Coble and his wife (who submitted and recovered on a derivative claim) as "Plaintiffs" and the Taylors as "Defendants."

Plaintiffs sued under § 272.030, RSMo 2000, which obligates a livestock owner to pay the true value of the damages sustained if his animal trespasses on other premises by breaching any lawful fence. Jurors found damages of $1.8 million and allocated fault 65% to Defendants and 35% to Plaintiffs, resulting in a $1,170,000 judgment for Plaintiffs. Both sides appeal.

Defendants raise two points. First, they argue that § 272.030 dates back to Missouri's 1808 Enclosure Act; cases long ago limited the statute's application to exterior fences; this was not an exterior fence; so § 272.030 did not apply.[2] Second, they urge that damages for personal injury are not recoverable under § 272.030.

Plaintiffs assert that comparative fault does not apply to § 272.030, a strict liability statute, so they should receive all $1.8 million damages found by the jury.

We deny all points raised and affirm the judgment.

---

[2] The following definitions may aid the reader:

*Exterior Fence*: One not within a common enclosure, such as a fence along a public road and any fence that is not a partition fence, division fence, or other interior fence.

*Partition Fence*: A boundary fence between two landowners. It may or may not also be a division fence.

*Division Fence*: A partition fence for which one adjoining landowner is legally obligated to maintain a designated portion and the other adjoining landowner must maintain the rest of the fence.

*Interior Fence*: A partition fence wholly within a common enclosure, and thus not an exterior fence.

*Common Enclosure*: Adjoining tracts fully enclosed by a continuous common fence.

*See* Robert V. Krueger, *Fencing Laws in Missouri and Livestock Running at Large on Public Roads*, Mo. Farm Law, § 5.1 (3d ed. 2006); Craig R. Heidemann, *Fencing Laws in Missouri: Confusion, Conflict, Ambiguity and a Need for Change*, 63 Mo. L. Rev. 537, 538 (1998); John H. Calvert, Comment, *Fencing Laws in Missouri-Restraining Animals*, 32 Mo. L. Rev. 519, 519-20 (1967).

## Fence Laws – Historical Background

Common law imposed a strict duty to keep one's stock from trespassing onto land of another, effectively forcing an owner to keep his stock fenced, in a barn, or tethered. Heidemann, 63 Mo. L. Rev. at 538-39. In the early U.S., many states rejected this rule, as recounted in ***Buford v. Houtz***, 133 U.S. 320, 327-28 (1890):

> Everybody used the open, uninclosed country which produced nutritious grasses as a public common on which their horses, cattle, hogs, and sheep could run and graze. It has never been understood that in those regions and in this country, in the progress of its settlement, the principle prevailed that a man was bound to keep his cattle confined within his own grounds, or else would be liable for their trespasses upon the uninclosed grounds of his neighbors. Such a principle was ill adapted to the nature and condition of the country at that time.

Time passed, land became more closely settled, and the matter became largely governed by statute:

> The first legislation to be adopted consisted of "fencing out" statutes, which provided that if the plaintiff properly fenced his land there was strict liability when the animals broke through the fence, but otherwise there was liability only when the owner was at fault. As the country became more settled, the conflict between the grazing and the agricultural interests resulted in many states in "fencing in" statutes, which required the owner of the animals to fence or otherwise restrain them, and made him strictly liable if he did not do so.

William L. Prosser, Torts § 76, at 497-98 (4th ed. 1971).

Missouri's "fencing out" law predates its statehood:

> The 1808 Enclosure Act, known as the "Open Range Act," was Missouri's first fence law and was enacted twelve years before statehood, while Missouri was merely a U.S. territory.... Under the Open Range Act, landowners were required to "fence out" freely pasturing livestock.... [It] impliedly vested livestock owners with the absolute right to pasture livestock upon a neighboring landowner's land if the adjoining land was not enclosed by a lawful, non-

3

> defective fence[,] ... [and] must have made infinite sense to the inhabitants of the Missouri Territory in 1808, considering the vast expanses of unoccupied, unclaimed land.

Heidemann, 63 Mo. L. Rev. at 540-41.

So in Missouri as elsewhere, initial "fencing out" or enclosure laws tended to address *exterior* fencing *around* farms, then as time passed and farms multiplied, later acts addressed *interior* fences *between* farms.[3] This understanding is key to Defendants' Point I theory that § 272.030, rooted in the 1808 Enclosure Act, applies only to *exterior* fences, this bull crossed an *interior* fence, so Plaintiffs sued under the wrong law.

### Defendants' Point I – Applicability of § 272.030

We can summarize Defendants' Point I argument in two steps:

1. Stock trespass across non-division partition fences is subject to strict liability, but due to gaps in various fence acts, this is at common law, not under § 272.030. This proposition can be traced to **Reddick v. Newburn**, 76 Mo. 423 (1882).[4]

---

[3] Later Missouri fence acts included:

- The 1869 Division Fence Act, which also established a remedy for animal trespasses through a division fence. Calvert, 32 Mo. L. Rev. at 520.

- The 1883 Closed Range Act, or Stock Law, which was "almost identical to the English common law rule that animal owners are strictly liable for their animals' trespasses." Heidemann, 63 Mo. L. Rev. at 543. Initially a local option law, it was made applicable statewide in 1969. **Id**. at 544.

- The 1963 Fence Act, or "Local Option," which abrogated the Enclosure Act and Division Fence Act in counties voting to adopt it (Greene County did not). **Id**. at 545.

- 2001 changes to RSMo chapter 272 (SCS for H.B. 219, 91st Gen. Assem., 1st Reg. Sess.). With one exception inapplicable here, these have not been judicially interpreted. *See* **Ferguson v. Ewing**, 437 S.W.3d 821, 824 & n.4 (Mo.App. 2014).

[4] From our research, other cases making similar statements eventually cite back to **Reddick** or non-Missouri cases, or involve fence statutes unrelated to § 272.030, or both. That said, we do not quarrel with cases indicating that early enclosure statutes were adopted with exterior fences in mind. Our point, discussed *infra*, is that shortly after **Reddick**, the legislature broadened that statute's language and remedy to cover "the premises [not just enclosure] of another" and "any lawful fence."

4

2. Statutory and common-law strict liability may be virtually identical, but Plaintiffs cannot recover on a theory they did not submit to the jury, so their verdict on the "wrong" basis for strict liability cannot stand. This finds support by analogy in Stock Law cases such as **Jones v. Habberman**, 67 S.W. 716 (Mo.App. 1902), and **Jackson v. Fulton**, 87 Mo. App. 228 (1901).[5]

Step one of Defendants' argument tracks the views of several commentators,[6] yet overlooks a statutory broadening shortly after **Reddick**. Current § 272.030 may be a descendent of the statute cited in **Reddick**, but it is a changed descendent.

The statute in **Reddick** (R.S. 1879, § 5653, see 76 Mo. at 425) applied by its terms only if livestock broke "into any inclosure" properly fenced.

Three years later, the legislature shed the term "inclosure" and extended the statute to livestock breaching "*any* lawful fence" to access "the *premises* of another" (Laws 1885, p. 166-67 (our emphasis)), which carries through, without material change, to today's statute under which Plaintiffs recovered, § 272.030:

> If any horses, cattle or other stock shall break over or through *any lawful fence*, as defined in section 272.020, *and by so doing obtain access to, or do trespass upon, the premises of another*, the owner of such animal shall, for the first trespass, make reparation to the party injured for the true value of the damages sustained ...."
> [emphasis ours].

"Missouri Courts do not presume that the legislature enacts meaningless provisions." **Parrott v. HQ, Inc.**, 907 S.W.2d 236, 240 (Mo.App. 1995). "When the legislature amends a statute, the amendment is presumed to have some effect." **Hagan v. Director of Revenue**, 968 S.W.2d 704, 706 (Mo. banc 1998). In

---

[5] While ours is not a Stock Law case, we assume *arguendo* that we likewise must reverse if § 272.030 cannot fit Plaintiffs' claim.

[6] *See* Krueger, Mo. Farm Law at § 5.23; Heidemann, 63 Mo. L. Rev. at 551; Calvert, 32 Mo. L. Rev. at 530-31.

deciding the amendment's effect, "the Court looks to the words used in the statute and the plain and ordinary meaning of those words." ***Id***. We also may consider the circumstances and conditions "existing at the time the change was made." ***Parrott***, 907 S.W.2d at 240.

Under these interpretive principles, we may and perhaps must reject Defendants' argument as wrong, or at any rate, unsupported by ***Reddick*** and unpersuasive given § 272.030's plain words. Either way, the point fails and we need not address other arguments against it. We deny Defendants' Point I.

**Defendants' Point II – Personal Injury Liability for Animal Trespass**

Defendants urge that § 272.030, as a trespass law, cannot support recovery for personal injuries. They admit that no reported Missouri case addresses the specific issue.

Most cases from other states appear to run against Defendants' position. *See* Annot., *Liability for personal injury or death caused by trespassing or intruding livestock*, 49 A.L.R.4th 710 (accessed electronically). So does § 504 of both the first and second Restatement of Torts.

Defendants quote and argue a small part of Restatement (Second) § 504, but disregard other portions and official comments that undercut their point.

For example, to quote Restatement (Second) § 504 somewhat more fully, livestock trespass liability "extends to any harm to the land or *to its possessor or a member of his household*, or their chattels, which might reasonably be expected to result from the intrusion of livestock," but not for harm "not reasonably to be expected from the intrusion." ***Id***. at (2), (3) (our emphasis).

6

Defendants also ignore this particularly relevant official comment:

> In determining whether particular harm to the land or to chattels on it or to the person of the possessor or of members of his household is of a kind that might reasonably be expected to follow from the trespass, account must be taken of the natural propensities of the particular kind of animal. *Thus any trespassing bull may be expected to attack and gore any other animal or any person who gets in his way. It is reasonably to be expected that efforts will be made by the possessor of the land or the members of his household to expel, capture or restrain the intruding animal, that the efforts will be resisted, and that harm to person or land or chattels may result.*

Restatement (Second) of Torts § 504, Comment g. (our emphasis).

Further, Defendants omit mention of this illustration:

> Without any fault on the part of A, his cow escapes from his land and wanders into B's garden. B attempts to drive the cow out of the garden. *The cow resists, attacks B, knocks him down and breaks his arm. A is subject to liability to B for* the trespass to the land, the damage to the garden, and *his bodily harm*.

*Id*. at Illustration 1 (our emphasis).

Plaintiffs are correct to observe that Restatement (Second) § 504, when read in its entirety, "defeats, rather than supports, the Defendants' argument." Defendants' other arguments fare no better.[7] Absent Missouri authority, we decline

---

[7] To cite one further example, Defendants urge that "under Missouri law, it is well settled that there can be no strict liability against a livestock owner whose animals cause personal injury absent proof that the owner was on notice that the animal possessed abnormally dangerous propensities," citing as case support **Duren v. Kunkel**, 814 S.W.2d 935, 937-38 (Mo. banc 1991), and **Alexander v. Crotchett**, 124 S.W.2d 534, 537 (Mo. App. 1939). The adequate reply is that **Duren** and **Alexander** were not animal trespass cases. Further, the following Restatement quote by our supreme court, to support its **Duren** decision, shows animal trespass was not at issue:

> *Except for animal trespass*, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if … he is negligent in failing to prevent the harm.

**Duren**, 814 S.W.2d at 938-39 (quoting Restatement (Second) of Torts § 518; our emphasis).

7

to ignore Restatement guidance, the weight of cases nationwide, and most importantly § 272.030's plain statutory directive that the animal owner "make reparation to the party injured for the true value of the damages sustained ...." Point II fails.

### Plaintiffs' Cross-Appeal – Comparative Fault

Comparative fault in accordance with the Uniform Comparative Fault Act applies to Missouri cases insofar as possible. *Gustafson v. Benda*, 661 S.W.2d 11, 15-16 (Mo. banc 1983). The trial court instructed on comparative fault, resulting in a 35% reduction in the award, all over Plaintiffs' objection that comparative fault does not fit strict liability, a claim they renew on appeal and we reject.

Lacking direct case-law support, Plaintiffs argue primarily from *Lippard v. Houdaille Industries*' short-lived product-liability exception.[8] This does not persuade us for two reasons: (1) the legislature statutorily abrogated *Lippard* almost immediately; and (2) this is not a products liability case.

Plaintiffs' plea that Defendants' liability is strict, not negligence-based, also fails per the UCFA and comments that our supreme court appended to *Gustafson*:

> "'Fault' includes acts or omissions ... that subject a person to strict tort liability." UCFA § 1(b). *Gustafson*, 661 S.W.2d at 18.

> "Although strict liability is sometimes called absolute liability or liability without fault, it is still included." Commissioners' Comment, UCFA § 1. *Gustafson*, 661 S.W.2d at 19.

> "For certain types of torts ... the defendant's conduct may be intentional, negligent or subject to strict liability. In the latter two

---

[8] *See* **Lippard v. Houdaille Industries, Inc.**, 715 S.W.2d 491 (Mo. banc 1986), *abrogated by* RSMo § 537.765 effective July 1, 1987, as recognized in *Egelhoff v. Holt*, 875 S.W.2d 543, 547 (Mo. banc 1994).

instances the Act would apply, but not in a case in which the
defendant intentionally inflicts the injury on the plaintiff."
Commissioners' Comment, UCFA § 1. *Gustafson*, 661 S.W.2d at
19.[9]

We need not belabor the issue. The UCFA would apply comparative fault here.

Missouri courts are to apply comparative fault per the UCFA insofar as possible.

*Gustafson*, 661 S.W.2d at 15.  Point denied.  Judgment affirmed.


DANIEL E. SCOTT, P.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, C.J. – CONCURS

---

[9] This observation defeats Plaintiffs' effort to distinguish between strict liability and negligence-based animal trespass claims for comparative fault purposes. No one claims, in the Comment's words, that "the defendant[s] intentionally inflict[ed] the injury on the plaintiff[s]."